OPINION OF THE COURT
Edward J. Greenfield, J.
The defendant, Citibank, N. A., has moved for an order pursuant to CPLR 3212 to dismiss the complaint of the plaintiff, Mohamed Amr Fouad, on the grounds that this suit for conversion is barred by the Statute of Limitations which requires that suit be filed within three years of the date of the conversion (CPLR 214 [3]). The complaint alleges a conversion *1022 in 1980. The action was commenced in 1988, eight years after the alleged conversion, but less than one year after plaintiff asserts he learned of the facts.
On June 30, 1970, Fouad entered into a lease agreement with the bank for the rental of safe-deposit box No. 801 in the vault at Citibank’s branch at 130 East 42nd Street, New York, New York. Mr. Fouad agreed to pay a yearly rent, which was $8 in 1970 and was later increased to $15 per year. This lease stated that it was to continue "from year to year until terminated by either party by notice given at least ten (10) days prior to the expiration of the initial term or any renewal term”. Citibank maintained the safe-deposit box for Mr. Fouad for 10 years. Mr. Fouad alleges in his complaint, as well as his affidavit, that it was Citibank’s custom and practice to collect the accrued safe-deposit rent by automatically debiting his checking account, which was maintained at that branch of Citibank. According to Mr. Fouad, this debiting practice was done by Citibank from 1970 through 1979, and attached to his affidavit are debit advices for 1972, 1973 and 1974. On or about February 11, 1976, Mr. Fouad notified Citibank of an address change from 315 East 72nd Street to "In Care of Mobil Oil Corporation, 150 East 42nd Street, New York, New York.”
Sometime thereafter, Citibank sent a letter to a "Mr. Amr Rouad, c/o Mobil Oil Corporation, 150 East 42nd Street, New York, New York” (emphasis added), advising that box No. 801, rented in the name of Rouad, had been opened on November 20, 1980, and an inventory of the contents was listed on the certificate of notary attached to the letter, showing the box to contain a cigarette case, a lighter, and a pocket watch. Plaintiff claims the contents to have been "of significant economic and sentimental value.” The letter contained a notice that the contents would be kept by the bank for a minimum of two years, and that they could be claimed upon payment of the outstanding charges and fees, but that after the expiration of two years the contents would be sold to satisfy the outstanding charges.
The agreement between the lessor of the box (the bank) and the lessee provided: "3. The Lessor shall be deemed to possess and is hereby granted all rights and remedies accorded lessors of safe deposit facilities by the Banking Law of the State of New York as the same may be amended from time to time, including, but not limited to, provisions concerning access to any safe, and concerning the right to open, remove and *1023 dispose of the contents of any safe, the rental of which is one year or more in arrears, or the contents of which are not removed within thirty (30) days after the termination of this lease for any reason other than the non-payment of rent.”
The only other document provided to the court with respect to this motion is a "Citibank Access Request” which shows that on or about November 12, 1986, Mr. Fouad attempted to gain access to box No. 801.
Banking Law § 335 governs the bank’s remedies when a safe-deposit box lease is terminated. Its provisions can be summarized as follows:
(a) That if the safe-deposit box rental is unpaid for one year, the bank may send the lessee a written notice by registered or certified mail, return receipt requested, notifying the lessee that if he does not pay the amount due or remove the contents of the box within 30 days, the box could be opened and the contents inventoried and removed.
(b) On failure of the lessee to act, the bank can remove and inventory the contents of the box in the presence of a notary public, who is to file a certificate. The contents are to be retained for at least two years.
(c) A copy of the certificate is to be mailed within 10 days of the opening to the lessee by registered or certified mail, return receipt requested, notifying him that the contents will be delivered to him if he pays the accrued charges.
(d) After two years, the bank is to send a notice, again by registered or certified mail, return receipt requested, that the property is to be sold after 30 days unless the lessee pays the outstanding charges. Then, after publication of an appropriate notice, the property can be sold at public auction.
Thus, it will be seen that the Banking Law prescribes meticulous safeguards before anyone risks losing his or her property. Three separate notices by registered mail must be sent and publication required, before the property can be disposed of. A forfeiture is not lightly to be countenanced.
The bank, in its papers, does not demonstrate that it adhered to the stringent requirements of the Banking Law before asserting dominion over plaintiff’s property, whatever it was. Nevertheless, it contends that more than three years having elapsed, its actions can no longer be challenged in a lawsuit.
Of course the three-year Statute of Limitations applies to the wrongful taking, withholding, or improper assertion of *1024 ownership and control of personal property. (Sporn v MCA Records, 58 NY2d 482; CPLR 214 [4].) Ordinarily, the statute runs from the time of the conversion, even though the plaintiff may have been unaware of it. (Varga v Credit Suisse, 5 AD2d 289, 292, affd 5 NY2d 865; Guild v Hopkins, 271 App Div 234, affd 297 NY 477; Brick v Cohn-Hall-Marx Co., 276 NY 259.)
It is not clear in this case when the bank sold or disposed of plaintiff’s property. The Banking Law required at least two years to pass from the emptying of the safe-deposit box in 1980. Whether the time lapse be six years or less, plaintiff urges that the facts and circumstances of this case warrant a finding that the bank be estopped from asserting the Statute of Limitations as a defense.
Plaintiff claims he was led to rely on the bank’s practice of automatically debiting his account every year for the safety-deposit box charges. The bank makes no showing that it departed from this practice, or notified plaintiff it was doing so. As he maintained his account there, he was entitled to believe, unless otherwise informed, that the relatively small annual fee for the safe-deposit box would continue to be deducted, as a routine administrative practice.
The fact is that the bank has not demonstrated that plaintiff was in arrears on the safe-deposit box rental. There are no copies of bills, no notices of arrears, and no proof the bank sent the first of the three written notices to plaintiff by registered or certified mail as required by statute giving him 30 days to pay or empty the box himself.
As to the second statutorily required notice containing the notary’s inventory of contents with the information that the contents will be delivered if the lessee pays the accrued charges within two years, the bank has provided a copy of such a notice, undated, with an inventory of contents when the box was opened on November 20, 1980. There is, however, no proof that the notice was sent by registered or certified mail, as the statute required, nor is there any return receipt. Further, the addressee of the notice was "Mr. Amr. Rouad, c/o Mobil Oil Corp., 150 E. 42nd St.”, not Mohamed Amr Fouad, and this misnomer may well have resulted in the notice never being delivered.
A third notice is called for by the statute after the bank has held the property for two years, that the property will be sold after 30 days unless the charges are paid. Again, there is no *1025 showing the bank ever sent such a notice, and no indication of the disposition of the property, by public auction or otherwise, and no proof of the requisite publication.
There is an "Access Request” appended to the papers which indicates plaintiff sought access to this or some other safe-deposit box in November 1986, but there is no indication he was ever told then he was in arrears, or that his property had been disposed of.
Given the total absence of proof that plaintiff was ever notified he was in arrears and that his property was being disposed of, it is apparent that he was led to believe there was nothing wrong, and his property would remain secure. Under these circumstances, it would be manifestly unjust to cut off his rights to claim his property, if he never knew the bank had acted to curtail his rights. The bank never gave him proper notice of his rights, as the law required. It is in such circumstances that the doctrine of equitable estoppel comes into play.
Section 17-103 (4) (b) of the General Obligations Law provides:
"4. This section * * *
"b. does not affect the power of the court to find that by reason of conduct of the party to be charged it is inequitable to permit him to interpose the defense of the statute of limitation[s]”.
The Statute of Limitations defense may not be utilized when it is the defendant’s wrongdoing which produces the long delay between accrual of the cause of action and institution of the proceeding. (General Stencils v Chiappa, 18 NY2d 125, 128.)
Accordingly, the court denies the defendant Citibank’s motion to dismiss the complaint on the grounds of Statute of Limitations since equitable estoppel bars the applicability of the Statute of Limitations.