Brenda P. DORÉ, Plaintiff,

v.

Julian WORMLEY aka Albert Wormley, Zadikim Yisrael, Zechariah Ben Levy, Georgia White, Chul Hanani aka Chul Henschel aka Harold Jones, Defendants.

No. 05 Civ. 2443(BSJ).

United States District Court, S.D. New York.

Feb. 8, 2010.

David Matthew Dore, Phillips Nizer LLP, New York, NY, for Plaintiff and Counter Defendant.

David G. Scudieri, Goldberg, Scudieri, Lindenberg & Block, P.C., Gregory Rawlins Preston, Preston Wilkins & Martin, New York, NY, for Defendants and Counter Claimant.

Brenda P. Dore, New York, NY, pro se.

### Opinion and Order

BARBARA S. JONES, District Judge.

On February 28, 2005, Plaintiff Brenda P. Doré ("Plaintiff") filed this diversity action alleging claims arising out of a dispute with Defendants Julian Wormley ("Defendant Wormley"), Zadikim Yisrael ("Defendant Yisrael"), Zechariah Ben Levy, Georgia White, and Chul Hanani ("Defendants") over property and fixtures contained within an edifice located at 1 West 123rd Street in New York City (the "Building").[1] On January 4, 2008, the Court dismissed the action with leave to replead, finding that Plaintiff had not adequately pled the requisite amount in controversy to sustain this Court's diversity jurisdiction. On February 4, 2008, Plaintiff filed an Amended Complaint.

Before the Court is Defendants' Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendants' Motion is GRANTED.

### BACKGROUND [2]

■ This case concerns the Commandment Keepers Ethiopian Hebrew Congre-

---

1. Defendants state in their Motion, and Plaintiff has not disputed, that 1 W. 123rd Street, New York, New York is identical to 31 Mt Morris Park West, New York, New York. (*See* Defs.' Mot. Summ. J. 1.) Accordingly, for the purposes of this Order, the "Building" refers to both of the subject addresses.

2. The facts stated here are drawn from Defendants' Local Rule 56.1 statement, Plaintiff's Local Rule 56.1 statement, and the Amended Complaint. Under Local Civil Rule 56.1(c), "material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the

gation Pillar and Ground of the Truth, Inc.

motion unless specifically controverted." *See also Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir.2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."). Moreover, "[e]ach statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e)." Local Civil Rule 56.1(d).

Defendants' Rule 56.1 statement cites as evidence the transcript from Plaintiff's November 6, 2008 deposition. Plaintiff, however, states that she "objects to the use of the deposition transcript in that defendant failed to provide a copy of the transcript to plaintiff and plaintiff has not in whole or in part certified any of the statements made in the deposition to be accurate." (Pl.'s Rule 56.1 Stmt. 1–2.)

Federal Rule of Civil Procedure 30(e) provides that "[o]n request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which: (A) to review the transcript or recording; and (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them." As other courts in this district have noted, though, "[t]he fact that Plaintiff did not sign the deposition transcript does not . . . make it inadmissible, as a deponent is required to sign the deposition transcript only if review of the transcript is requested before the deposition is completed and changes are made by the deponent." *Merring v. Town of Tuxedo, N.Y.*, No. 07 Civ. 10381, 2009 WL 849752, at *1 (S.D.N.Y. Mar. 31, 2009) (internal quotations omitted).

In the instant case, Plaintiff states that "at the conclusion of [her] deposition, [Defendants' counsel] informed [her] that the deposition was not completed and would schedule an additional two hours." (Pl.'s Aff. Opp'n Summ. J. ¶ 3.) The Court interprets this statement as asserting that Plaintiff was not aware at the conclusion of her deposition that the deposition was complete and thus that she did not have an opportunity to request a transcript of the deposition in order to review her testimony. However, Plaintiff's deposition was conducted on November 6, 2008. Plaintiff should have understood that the deposition had been deemed complete when Defendants did not contact her within several weeks of that date to schedule a second day of testimony. However, Plaintiff failed to request a copy of her deposition transcript at any time prior to Defendants' filing of their Motion for summary judgment on March 10, 2009. *See Pacheco v. New York Presbyterian Hosp.*, 593 F.Supp.2d 599, 605 n. 1 (S.D.N.Y.2009) ("The failure of a party to request a copy of his own deposition transcript precludes his right to make changes to his transcript."). Moreover, after Defendants filed their Motion on March 10, 2009, Plaintiff did not immediately object to the use of her deposition transcript or request a copy of the transcript to review. On March 10, 2009, Plaintiff wrote a letter to the Court asking that Defendants remove personal identifiers from the publicly docketed transcript, but not even mentioning the question of reviewing or certifying the transcript itself. (*See* Pl. Letter Mar. 10, 2009.) Instead, Plaintiff waited another month, until filing her opposition papers on April 3, 2009, to object to the use of the deposition transcript in this case. *Cf. Pacheco*, 593 F.Supp.2d at 605 n. 1 (finding that a plaintiff could not contest the use of his deposition testimony when he had not "produced any sworn statement or document indicating he requested a copy of his deposition").

Even when stating her belated objection to the deposition transcript on April 3, 2009, Plaintiff did not submit an errata sheet or otherwise list changes to the original transcript. On the contrary, Plaintiff simply states that she does not "admit to the content" of any of her deposition testimony. (*See, e.g.*, Pl.'s Rule 56.1 Stmt. ¶ 9.) Such conclusory statements cannot invalidate otherwise admissible record evidence. *Cf. CSC Holdings, Inc. v. Alberto*, 379 F.Supp.2d 490, 493 n. 1 (S.D.N.Y.2005) (stating that "original deposition answers constitute the admissions of a party, and as such form part of the record evidence"). Plaintiff's objections to the use of her deposition transcript are belated, conclusory, and unconvincing. Accordingly, the Court disregards Plaintiff's attempt to disavow her deposition testimony and considers the transcript of Plaintiff's deposition testimony admissible evidence.

("Commandment Pillar"), a congregation founded in Harlem, New York City in 1921 by Chief Rabbi W.A. Matthew, "the first Chief Rabbi of African parentage in the United States." (Am. Compl. ¶ 3.) In 1962, Commandment Pillar purchased the Building for use as a synagogue. (*Id.* Ex. 4 ¶ 4.) Plaintiff is Chief Rabbi Matthew's granddaughter. (*Id.* ¶ 3.) According to Plaintiff, the Building is now a New York City Landmark. (*Id.* ¶ 21.)

Chief Rabbi Matthew died in 1973. (*See* Movants' Rule 56.1 Stmt. ¶ 5; Pl.'s Rule 56.1 Stmt. ¶ 5.) Shortly thereafter, a dispute arose between Plaintiff and Commandment Pillar, on the one hand, and a rival congregation associated with the Building, the Commandment Keepers Congregation, Inc. ("Commandment Keepers"). (Am. Compl. ¶¶ 4, 12.) Defendants are members of Commandment Keepers. (*See id.* ¶ 4.)

Plaintiff states that Defendants, as members of Commandment Keepers, began illegally occupying the Building sometime in the 1970s. (*See* Movants' Rule 56.1 Stmt. ¶ 7; Pl.'s Rule 56.1 Stmt. ¶ 7.[3]) Plaintiff further alleges that Defendants have excluded Plaintiff and other members of Commandment Pillar from the Building since that time, preventing Plaintiff from using the Building for religious purposes. (*See id.*[4]) Plaintiff also claims that Defendants have damaged the building in the course of their occupation, and that "[m]any of the rooms in this landmark edifice have been damaged or vandalized during the time that defendants were locked in the building." (Am. Compl. ¶ 24.) Plaintiff states that Defendants have received grants from the Landmark Conservancy to repair the Building, but have failed to perform these repairs. (*Id.* ¶ 30.)

Plaintiff claims that personal property belonging to Plaintiff remained in the Building after she was excluded from the Building in the 1970s. (*See* Movants' Rule 56.1 Stmt. ¶ 8; Pl.'s Rule 56.1 Stmt. ¶ 8.[5]) According to Plaintiff, this property included, *inter alia*, family heirlooms, Torahs, furniture, documents, journals, televisions, and musical instruments. (*See id.*) Plaintiff claims that she has made multiple demands for the return of personal property allegedly within the Building, but that Defendants have refused to return the property in question. (*See* Movants' Rule 56.1 Stmt. ¶ 11; Pl.'s Rule 56.1 Stmt. ¶ 11.) Plaintiff further alleges that Defendants have damaged her personal property remaining within the Building, including religious artifacts. (*See* Am. Compl. ¶ 13.)

On May 17, 2006, Defendants moved in New York State Supreme Court for an injunction prohibiting the Plaintiff from entering into or coming within 500 feet of the Building. (*See* Movants' Rule 56.1 Stmt. ¶ 22; Pl.'s Rule 56.1 Stmt. ¶ 22.) On June 7, 2008, the State Supreme Court entered a Judgment (the "Judgment") granting the requested relief and stating that "[t]his permanent injunction may be specifically enforced by any law enforce-

---

**3.** Plaintiff notes that Defendants, in their Rule 56.1 statement, frequently misidentify the deposition pages cited to support the relevant assertion. (*See* Pl.'s Rule 56.1 Stmt. ¶ 7.) The Court has reviewed the deposition transcript in detail, and has identified the pages on which the relevant testimony may be found. (*See* Pl. Dep. 80, 129–30, 158 (pages on which relevant testimony may be found).) Henceforth, where Defendants cite to the wrong page of the deposition transcript, the Court provides corrected pagination.

**4.** (*See* Pl. Dep. 267–69 (pages on which relevant testimony may be found).)

**5.** (*See* Pl. Dep. 113, 116, 140–41, 146, 155, 167, 170–80, 201, 204 (pages on which relevant testimony may be found).)

ment agency of the City and/or State of New York." (*See* Movants' Rule 56.1 Stmt. ¶¶ 22–23; Pl.'s Rule 56.1 Stmt. ¶¶ 22–23.) In September 2006, Plaintiff was arrested for violating the June 7, 2008 Judgment and being within 500 feet of the Building. (*See* Movants' Rule 56.1 Stmt. ¶ 26; Pl.'s Rule 56.1 Stmt. ¶ 26.) On January 2, 2007, the Judgment was vacated and the injunction against Plaintiff lifted. (*Id.*)

In September 2006, a petition (the "Petition") was filed in New York State Supreme Court on behalf of the Commandment Keepers Ethiopian Hebrew Congregation of the Living God, Pillar and Ground of Truth, Inc. requesting leave under Article 12 of the Religious Corporations Law and Article 511 of the Not–For–Profit Corporation Law to sell the Building to an entity known as 31 Mount Morris Park West LLC. (*See* Movants' Rule 56.1 Stmt. ¶ 34;-Pl.'s Rule 56.1 Stmt. ¶ 34; Am. Compl. ¶ 28.) The State Supreme Court granted the Petition in an Order and Amended Order dated November 28, 2006 and April 12, 2007, respectively. (*See* Movants' Rule 56.1 Stmt. ¶ 34; Pl.'s Rule 56.1 Stmt. ¶ 34.)

On October 17, 2007, following the sale of the Building to 31 Mount Morris Park West LLC, Plaintiff's brother David Matthew Doré ("Counsel Doré"), counsel to Plaintiff in the instant action and a member of Commandment Pillar, moved in New York State Supreme Court to vacate the Orders granting permission to sell the Building. (*See* Movants' Rule 56.1 Stmt. ¶ 35; Pl.'s Rule 56.1 Stmt. ¶ 35.) In March 2008, the State Supreme Court vacated the Orders granting leave to sell the Building to 31 Mount Morris Park West LLC. (*See* Movants' Rule 56.1 Stmt. ¶ 36; Pl.'s Rule 56.1 Stmt. ¶ 36.) Commandment Keepers have since resubmitted the Petition for leave to sell the Building to 31

Mount Morris Park West LLC. (*See id.*) Counsel Doré has filed objections to this Petition. (*See id.*) The Petition is currently pending before the New York State Supreme Court. (*See id.*)

Plaintiff filed her original Complaint in this action on February 28, 2005. On January 18, 2007, Defendants filed a motion to dismiss the Complaint, arguing that the parties were not completely diverse and that Plaintiff had not satisfied the amount in controversy requirement of 28 U.S.C. § 1332. In an Order dated January 4, 2008, this Court found that the non-diverse defendants were dispensable parties, dismissed them, and granted Plaintiff leave to file an amended complaint that adequately addressed the amount in controversy.

On February 4, 2008, Plaintiff filed an Amended Complaint in the instant action in the United States District Court for the Southern District of New York alleging (1) that Defendants have misrepresented themselves as officers of Commandment Pillar; (2) that Defendants have wrongfully prevented Plaintiff from entering the Building and using it for religious services; (3) that Defendants have stalked and harassed Plaintiff and members of Commandment Pillar; (4) that Defendants have damaged and/or destroyed Plaintiff's personal property within the Building; (5) that Defendants have prevented Plaintiff from recovering personal property within the Building belonging to Plaintiff; (6) that Defendants caused Plaintiff to be falsely arrested; (7) that Defendants have libeled and slandered Plaintiff; (8) that Defendants' attempt to sell the Building to 31 Mount Morris Park LLC was undertaken in violation of New York Religious Corporations Law and the Not–For–Profit Corporation Law; and (9) that Defendants have mismanaged real property once held by Congregation Pillar and by Plaintiff, thereby causing these properties to be

lost. Defendants now move for summary judgment on all counts.

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060–61 (2d Cir.1995). The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir.1994). However, Plaintiff may not "rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that [her] version of the events is not wholly fanciful." *Morris v. Lindau*, 196 F.3d 102, 109 (2d Cir.1999).[6]

## DISCUSSION

### I. Plaintiff's Claims Regarding Ownership or Use Rights to Real and Personal Property

### A. Plaintiff's Claims Relating to Personal Property Allegedly Converted or Destroyed Are Time–Barred

Plaintiff alleges that Defendants have converted or destroyed personal property belonging to Plaintiff and located within the Building, and demands damages for these alleged acts. Plaintiff further demands that Defendants return personal property allegedly belonging to Plaintiff that remains within the Building.

Defendants, in turn, argue that Plaintiff's demand for damages for the alleged conversion and destruction of personal property, as well as her demand for the return of personal property, are time-barred. (*See* Defs.' Mot. Summ. J. 14, 15.) The Court agrees.

Under New York law, allegations of the "unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights" sound in conversion. *Vigilant Ins. Co. of Am. v. Housing Auth. of City of El Paso, Tex.*, 87 N.Y.2d 36, 637

---

**6.** The Court notes that Plaintiff was proceeding *pro se* when she filed the Amended Complaint. Based on this initial status, the Court construes her papers liberally and "interpret[s] them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994) (internal citation omitted). Counsel Doré assisted in the drafting of the Amended Complaint and later entered a notice of appearance on Plaintiff's behalf. (*See* Am. Compl. ¶ 12.) Nevertheless, the Court has liberally construed all of Plaintiff's submissions in accordance with her original *pro se* status.

N.Y.S.2d 342, 660 N.E.2d 1121, 1126 (1995). To establish a cause of action in conversion, "the plaintiff must show legal ownership or an immediate superior right of possession to a specific identifiable thing and must show that the defendant exercised an unauthorized dominion over the thing in question to the exclusion of the plaintiff's rights. Tangible personal property or specific money must be involved." *Batsidis v. Batsidis,* 9 A.D.3d 342, 778 N.Y.S.2d 913, 913 (2004). Both actions for conversion and actions for damages for the taking of a chattel are governed by the three-year limitation period of N.Y. C.P.L.R. § 214, and "accrual runs from the date the conversion takes place and not from discovery or the exercise of diligence to discover." *Vigilant Ins.,* 637 N.Y.S.2d 342, 660 N.E.2d at 1126; *see* N.Y. C.P.L.R. § 214; *see also Fouad v. Citibank, N.A.,* 146 Misc.2d 1021, 553 N.Y.S.2d 577, 579 (N.Y.Sup.Ct.1989) ("[T]he three-year statute of limitations applies to the wrongful taking, withholding, or improper assertion of ownership and control of personal property.").

The law of replevin governs actions for the recovery of stolen or wrongfully detained property. A cause of action in replevin "must establish that the defendant is in possession of certain property of which the plaintiff claims to have a superior right." *Batsidis,* 778 N.Y.S.2d at 913. "Demand upon, and refusal of, the person in possession of the chattel to return it [are] essential elements of a cause of action in replevin." *In re Peters,* 34 A.D.3d 29, 821 N.Y.S.2d 61, 65 (2006).

Actions in replevin are governed by a three-year statute of limitations. *See Matter of Lamb,* 145 A.D.2d 935, 536 N.Y.S.2d 613, 613 (1988); *see also McGough v. Leslie,* 65 A.D.3d 895, 884 N.Y.S.2d 756, 757 (2009). "As against a thief, a cause of action for replevin ac-

crues, and the limitations period therefore begins to run, immediately upon the occurrence of the theft, and this is so even if the owner does not know that a theft has occurred." *Solomon · R. Guggenheim Found. v. Lubell,* 153 A.D.2d 143, 550 N.Y.S.2d 618, 620 (1990).

In the instant case, Defendants have introduced a copy of sworn testimony in which Plaintiff stated that she first attempted to recover the personal property that allegedly remains in the Building "[s]omewhere shortly after they started locking members out"; i.e., "somewhere around the '70s." (Pl. Dep. 132, 131.) As Defendants note, Plaintiff reiterated these dates throughout her deposition, convincingly establishing that the personal items allegedly belonging to Plaintiff and in the custody of Defendants has been locked inside the Building since the late 1970s and thus that her claims for conversion and replevin are time-barred. (*See* Defs.' Mot. Summ. J. 15; *see, e.g.,* Pl. Dep. 147 (stating that Plaintiff first tried to recover the tables allegedly belonging to her and within the Building "shortly before the lockout began" in the late 1970s"; *id.* (testifying that Plaintiff first tried to recover a trunk allegedly held by Defendants "[a] round 1980"); *id.* 201 (stating that glasses, gold plates, Chinaware, and cabinets allegedly belonging to Plaintiff were left in the Building in or about 1976); *id.* 155–56 (stating that Plaintiff first made an attempt to recover televisions allegedly belonging to Plaintiff and allegedly located within the Building sometime prior to 1980).)

Plaintiff has stated that documents and other items allegedly belonging to her were stolen from the Building "[a]round the time [the Building] was ransacked and everything was stolen around 2007." (Pl. Dep. 70.) However, according to Plaintiff's own testimony, all items inside the

Building—including these documents—have been inaccessible to Plaintiff since the late 1970s, when Plaintiff was first locked out of the Building. (*See id.* 132.) As discussed *supra*, the statute of limitations for conversion and replevin actions is three years. Plaintiff sued for the return of personal property and for damages for the destruction or conversion of personal property in 2005—more than twenty years too late even assuming that Plaintiff was separated from her property at the latest date that she provides; i.e., sometime around 1980. Therefore, even if the Building was ransacked in 2007, and property formerly belonging to Plaintiff stolen, the statute of limitations for Plaintiff to claim this property or to demand damages for its destruction was long over by that time.

Accordingly, Plaintiff's causes of action in conversion and replevin are time-barred, and must be DISMISSED.

### B. Plaintiff's Claims Regarding Real Property Allegedly Wrongfully Seized Are Time–Barred

Plaintiff also alleges that Defendants have wrongfully interfered with her ownership of the Building, an action sounding in real property law. Defendants argue that this cause of action is also time-barred under New York State law. The Court agrees.

An action for the return of real property is governed by a ten-year statute of limitations. *See, e.g., Deering v. 860 Fifth Ave. Corp.,* 220 A.D.2d 303, 634 N.Y.S.2d 674, 675 (1995) ("[A]n action to recover real property or its possession cannot be commenced unless the plaintiff, or his prede-

cessor in interest, was seized or possessed of the premises within ten years before the commencement of the action."); *see also* N.Y. C.P.L.R. § 212(a). "A person claiming title to real property, but not in possession thereof, must act affirmatively and within the time provided by statute." *Downes v. Peluso,* 115 A.D.2d 454, 495 N.Y.S.2d 691, 692 (1985).

 In the instant case, Plaintiff has stated in sworn testimony that "[s]omewhere in the '70s area" Defendants began "[r]efusing entry [to the Building], locking the doors." (Pl. Dep. 158–59; *see also* Pl. Dep. 130–31 ("Mr. White started putting locks on the door somewhere along the '70s route."). To the extent that Plaintiff seeks to recover the Building itself, such an action must be brought within ten years of the alleged seizure. *See* N.Y. C.P.L.R. C.P.L.R. 212(a). This action, brought in 2005, is clearly beyond the statute of limitations.

Accordingly, Plaintiff's cause of action for the recovery of the Building itself must be DISMISSED.[7]

### C. Plaintiff's Claims Regarding Her Alleged Right to Use the Building For the Purpose of Worship Fail Due to the Revocation of Any License She Might Once Have Had

 Under New York law, "a license is the authority to do a particular act or series of acts upon another's land, which would amount to a trespass without such permission." *Ark Bryant Park Corp. v. Bryant Park Restoration Corp.,* 285 A.D.2d 143, 730 N.Y.S.2d 48, 54 (2001) (internal quotations omitted). "A license

---

7. Because, according to Plaintiff's own testimony, she has not been in possession of the Building since the 1970s, Plaintiff is not the rightful owner of the Building and lacks standing to sue for any alleged damage or changes to Building fixtures. Accordingly, to the extent that Plaintiff intended to bring

claims for the alleged destruction of "historical windows" (Am. Compl. ¶ 23,) vandalism to the Building directory (Am. Compl. ¶ 14,) intimidating notices placed on the Building, or the breaking of locks affixed to Building doors (*id.* ¶ 13,) these claims are also DISMISSED for lack of standing.

... grants the licensee a revocable non-assignable privilege ... without granting possession of any interest therein." *Roman Catholic Church of Our Lady of Sorrows v. Prince Realty Mgmt., LLC*, 47 A.D.3d 909, 850 N.Y.S.2d 569, 570 (2008). Because a license does not grant an interest in realty, it is "cancelable at will, and without cause." *See Am. Jewish Theatre, Inc. v. Roundabout Theatre Co., Inc.*, 203 A.D.2d 155, 610 N.Y.S.2d 256, 257 (1994); *Simmons v. Abbondandolo*, 184 A.D.2d 878, 585 N.Y.S.2d 535, 536 (1992).

█ To the extent that Plaintiff intends to claim that she has a license to use the Building for the specific purpose of worship and that Defendants have blocked this use, (*see* Am. Compl. ¶ 10 (alleging that Defendants have "harass[ed], intimidate[d] and illegally lock[ed] out plaintiff pro se and other original congregation members preventing access to the temple for religious and other relevant purposes"),) this license must be considered revoked. When Plaintiff was first locked out of the Building in or around 1976, she was on notice that any license she might once have had to use the Building had been cancelled. *Cf. Faith United Christian Church, Inc. v. United Christian Church, Inc.*, 266 A.D.2d 428, 698 N.Y.S.2d 874, 874 (1999) ("Although a license may become irrevocable where the licensee has altered its position in reliance upon the license, there is no evidence in this case that Faith changed its position with respect to the premises, or expended any moneys in excess of ordinary maintenance and repairs, which it was required to pay in lieu of rent. Contrary to Faith's claim, United's decision to sell the premises was not a breach of any duty owed to the Faith congregation. The governing body of a religious corporation has the authority to discontinue work at a church, even in disregard of the wishes of the congregation.").

## II. Plaintiff's Claims of Misrepresentation and Misuse of Landmarks Conservancy Funds Fail for Lack of Standing

█ In *Warth v. Seldin*, the Supreme Court noted that "even when the plaintiff has alleged injury sufficient to meet the case or controversy' requirement, ... the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *see also Farrell v. Burke*, 449 F.3d 470, 494 (2d Cir.2006) ("Federal courts as a general rule allow litigants to assert only their own legal rights and interests, and not the legal rights and interests of third parties."). In the corporate context, it is axiomatic that "[a] shareholder—even the sole shareholder—does not have standing to assert claims alleging wrongs to the corporation." *Jones v. Niagara Frontier Transp. Auth. (NFTA)*, 836 F.2d 731, 736 (2d Cir.1987); *see also id.* (upholding the district court decision that plaintiff "did not have standing as an individual because the claims asserted all involved injuries to the Corporation").

In the instant case, Plaintiff alleges that the Defendants "have engaged in misrepresentation, falsely claiming to be officers of Commandment Pillar." (Am. Compl. ¶ 9.) Plaintiff claims that Defendants "have not been duly elected to said positions but have given themselves titles and false authority." (*Id.*) As relief, Plaintiff demands "[a]n order preventing the defendants from holding themselves out as officers or agents of Commandment Keeper Ethiopian Hebrew Congregation of the Living God Pillar and Ground of Truth, Inc." (*Id.* ¶ 38(d).)

Plaintiff also alleges that Defendants "have received grants from the Landmark Conservancy to repair the building and have failed to do so." (Am. Compl. ¶ 30.) As relief, Plaintiff demands "an order for an accounting of any monies had and/or received from the Landmarks Conservancy or any governmental agency and the name of the defendant or party that funds were disbursed to." (*Id.* ¶ 38(g).)

Defendants, in turn, argue that "[t]o the extent that Plaintiff seeks from this Court a determination as to the true Board of Trustee or leadership of the Commandment Keepers, this action would not be cognizable because Plaintiff . . . is suing here in her personal capacity and not on behalf of the Commandment Keepers." (Defs.' Mot. Summ. J. 14.) More generally, Defendants argue that "Plaintiff's allegations that are related to the Commandment Keepers . . . should be dismissed because Plaintiff is not suing on behalf of the Commandment Keepers." (*Id.* 17.) The Court agrees.

■■■ Defendants have introduced evidence indicating that Plaintiff brings this action in her personal capacity and not on behalf of Commandment Pillar or in her capacity as an alleged member of the executive board of Commandment Pillar. (*See* Pl. Dep. 281–82.) Indeed, Plaintiff concedes this point, stating in her Opposition to Defendants' Motion that "Plaintiff is maintaining this action in her individual capacity." (Pl.'s Mem. Opp'n Summ. J. 2.) However, as Defendants point out, the misrepresentation and misuse of funds injuries alleged in the Complaint and elaborated upon in Plaintiff's Affirmation in Opposition to Defendants' Motion are injuries to Commandment Pillar rather than to Plaintiff as an individual, and thus Plaintiff—suing in her individual capacity—lacks standing to bring these claims. (*See* Defs.' Mot. Summ. J. 14, 16.)

Ultimately, Plaintiff has been unable to produce any evidence indicating a genuine issue of fact as to whether she has standing to bring a claim on behalf of Commandment Pillar, or even as to whether she is a member of the executive board of Commandment Pillar.[8] Defendants have introduced into evidence a copy of Plaintiff's response to Defendants' document request, in which Defendants ask that Plaintiff produce "[c]opies of any documents establishing or showing the 'lawful Executive Board' " as referred to in the Amended Complaint. (Preston Decl. Ex. 5 ("Doc. Req.") 4.) In her response, Plaintiff stated that she "object[ed] to this Request on the grounds that a direction to produce all documents establishing the "lawful Executive Board" does not describe with reasonable particularity the items or categories of documents requested. There are no documents that respond to this request." (*Id.*) The Court finds this response inadequate given that Plaintiff appears to assert her membership in an alleged "lawful Executive Board" as grounds for her standing to contest the disposition of congregation funds and the identity of congregation officials. Ultimately, although Plaintiff may feel personally aggrieved by Defendants' alleged misuse of Commandment Pillar's name, and though she may have

---

8. Even in responding to Defendants' motion for summary judgment, Plaintiff continues to press her argument on behalf of a third party, claiming that "defendants lied to courts and government agencies [about] being officers of a valid religious corporation, Commandment Pillar." (Pl.'s Aff. Opp'n Summ. J. ¶ 7; *see also id.* ¶ 13 ("The defendants falsely claimed to be officers of the Commandment Keepers Ethiopian Hebrew Congregation the Pillar and Ground of the Truth, Inc. but masqueraded under the name of a fictitious religious corporation Commandment Keepers, the corporation they established for their deceptive plans.").)

faced losses as a result, the underlying legal right and interest is that of a third party.

Accordingly, even assuming that the alleged misrepresentations and misuses of funds took place, and that Defendants had the nefarious intent that Plaintiff alleges, Plaintiff does not have standing to contest these injuries to Commandment Pillar and her cause of action for misrepresentation and misuse of Landmarks Conservancy funds must be DISMISSED.[9]

### III. Plaintiff's Cause of Action for False Arrest and/or Malicious Prosecution Fails Because There Was Probable Cause for the Arrest [10]

As the New York Court of Appeals observed in *Broughton v. State,* "[t]he tort of malicious prosecution protects the personal interest of freedom from unjustifiable litigation. The essence of malicious prosecution is the perversion of proper legal procedures." 37 N.Y.2d 451, 373 N.Y.S.2d 87, 335 N.E.2d 310, 314 (1975). "Under New York law, a claim for malicious prosecution requires (1) initiation of litigation with malice, i.e. 'a purpose other than the adjudication of a claim,' (2) 'an entire lack of probable cause in the prior proceeding,' (3) special damages going beyond the 'demands of defending a lawsuit' to encompass 'a grievance akin to the effect of a provisional remedy,' and (4) entry of judgment against the malicious

plaintiff in the prior lawsuit." *Intershoe, Inc. v. Filanto S.P.A.,* 97 F.Supp.2d 471, 476 (S.D.N.Y.2000) (citing *Engel v. CBS, Inc.,* 93 N.Y.2d 195, 689 N.Y.S.2d 411, 711 N.E.2d 626, 631–32 (1999)). Ordinarily, a malicious prosecution "involves an interference with the claimant's person or property by resort to a provisional remedy such as attachment, arrest or injunction." *Miss Universe, Inc. v. Patricelli,* 753 F.2d 235, 238–39 (2d Cir.1985).

In the instant case, Plaintiff alleges that "in September 2006, [D]efendant [Yisrael] lied to police that plaintiff was in violation of a civil judgment .... [and that] [t]his lie resulted in the false arrest of plaintiff in her residence at night at 11:00 pm without a warrant." (Am. Compl. ¶ 34.) Plaintiff states that "[b]ased solely on a civil judgment in which plaintiff was not a party, Plaintiff was held locked up in the 28th precinct for several hours and then held overnight in the New York City criminal court central booking section." (*Id.*) Plaintiff further states that "[t]he civil judgment was vacated and dismissed." (*Id.*)

Defendants have responded to this claim, arguing that "Plaintiff's cause of action for false arrest should be dismissed because Plaintiff cannot establish that her arrest occurred without probable cause." (Defs.' Mot. Summ. J. 17.) The Court agrees.

---

**9.** In the Amended Complaint, Plaintiff also appears to bring a claim for false arrest on behalf of Natan Lenjo as well as claims for stalking, harassment, and intimidation on behalf of "other original congregation members." (*See* Am. Compl. ¶¶ 10, 11, 20.) Defendants argue in their Motion that Natan Lenjo is not a party to this action and thus that any claims brought on his behalf must be dismissed, and the Court agrees. (*See* Defs.' Mot. Summ. J. 15.) Plaintiff has stated in sworn testimony that she is suing in her personal capacity and not on behalf of any organization or other individual. (*See* Pl. Dep. 281–82.) Accordingly, any claims brought on

behalf of any other individual, including Natan Lenjo, must be DISMISSED.

**10.** It is unclear whether Plaintiff's claim is for false arrest or for malicious prosecution. However, in either event, her claim fails because there was probable cause for her arrest. The existence of probable cause is a complete defense to claims for both false arrest and malicious prosecution. *See Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir.1995) (false arrest); *Russell v. Smith,* 68 F.3d 33, 36 (2d Cir.1995) (malicious prosecution).

In moving for summary judgment on this claim, Defendants have provided a copy of the Judgment issued by the New York State Supreme Court on June 7, 2006 prohibiting Plaintiff from entering into or coming within 500 feet of the Building. (*See* Preston Decl. Ex. C.) This Judgment was specifically enforceable by any law enforcement agency of the State or City of New York. (*See id.*) While the Judgment was subsequently vacated on January 2, 2 007, it was still in force at the time of Plaintiff's arrest in September 2006. (*See* Am. Compl. Ex. H (vacating Judgment); *see also* Pl. Dep. 233–35 (discussing vacatur).)

In her opposition to Defendants' Motion for summary judgment, Plaintiff admits that the Judgment was in place at the time of her arrest. (*See* Pl. Dep. 235.) However, Plaintiff claims that the Judgment was "[b]ased on lies." (*Id.*) Plaintiff claims that "[Defendant Yisrael] knew and her counsel David Scudieri knew that the civil judgment was unlawful and yet they persisted in using the judgment to facilitate the arrest." (Pl.'s Aff. Opp'n Summ. J. ¶ 10.) Plaintiff further states that "[t]he acts of the defendants were particularly devious because they engaged the police in their crusade of deceit.... The police referred to the judgment as authority for their actions." (*Id.* ¶ 12; *see also id.* ¶ 15 ("[D]efendant [Yisrael] illegally used the judgment to coerce the police to effectuate the false arrest.").)

While Plaintiff contests the validity of the Judgment, though, she does not refute Defendants' contention that she violated

the Judgment by coming within 500 feet of the Building:

Q. 'Would [you] agree that in September 2006 you were arrested for violating the provisions of [the Judgment]?'

A. 'That was the charge.'

Q. 'You were arrested because you were within 500 feet of the [Building]?'

A. 'That's what the charge was.'

Q. 'Were you in fact within 500 feet of the [Building] in September of 2006?'

A. 'I don't recall where I was....'

Q. 'At any time in September of 2006 were you within 500 feet of the [Building]?'

A. 'I can't recall.'....

Q. 'At any time after entry of [the Judgment], were you on the same block of the [Building]?'

A. 'I don't know.'

(Pl. Dep. 230, 231.[11])

Plaintiff cannot defeat Defendants' Motion for summary judgment with conclusory arguments about the foundation of the Judgment. *See, e.g., Major League Baseball Props., Inc. v. Salvino, Inc.,* 542 F.3d 290, 310 (2d Cir.2008) ("A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory, or based on speculation." (internal quotations omitted)). As the New York Court of Appeals has repeatedly stressed, "malicious prosecution claims are not encouraged, and thus, without a clear

---

**11.** The Court notes that Plaintiff has consistently maintained that she was in her home at the time of her arrest, rather than in the vicinity of the Building. (*See, e.g.,* Am. Compl. ¶ 34.) However, the exact location of Plaintiff's arrest is irrelevant. Defendants have introduced evidence indicating that

Plaintiff was arrested *because* she violated the Judgment at some point prior to her arrest by coming within 500 feet of the Building, and Plaintiff has failed to refute this showing of probable cause by present[ing] "specific facts showing [that] there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

and satisfactory showing that plaintiffs in the previous action lacked reasonable grounds, the case would be dismissed." *Engel*, 689 N.Y.S.2d 411, 711 N.E.2d at 629. It is evident that if Plaintiff came within 500 feet of the Building during the time that the Judgment was valid, Defendants had probable cause to call upon law enforcement to enforce the Judgment. *Cf. Fortunato v. City of New York*, 63 A.D.3d 880, 882 N.Y.S.2d 195, 196 (2009) ("Probable cause to believe that a person committed a crime is a complete defense to claims of false arrest and malicious prosecution."). As Plaintiff has failed to refute Defendants' contention that she violated the Judgment by coming within 500 feet of the Building during the time that the Judgment was in force, this Court cannot find that Defendants lacked probable cause in initiating proceedings against her.

Because Plaintiff cannot show that there was no probable cause for her arrest, her action for malicious prosecution and/or for false arrest must be DISMISSED.

IV. *Plaintiff's Claims of Harassment, Libel, Slander, and Fraudulence Conveyance of Real Property Are Dismissed as Conclusory and Unsupported by Evidence in the Record*

Plaintiff alleges in the Amended Complaint that Defendants have "harass[ed][and] intimidate[d] . . . plaintiff pro se" (Am. Compl. ¶ 9,) "engaged in verbal and physical harassment even to the extent of stalking the plaintiff pro se" (*id.* ¶ 11,) and "engaged in a pattern and practice of slander and libel against the good name and reputation of plaintiff (*id.* ¶ 37.) Plaintiff further claims that Defendants' alleged "behavior has resulted in the loss of all of the numerous and valuable properties once held by the congregation and plaintiff pro se in West Babylon, Long Island" and that Defendants "mismanaged said properties and all were lost due to non-payment of taxes and fraudulent conveyances." (*Id.* ¶ 36.)

Defendants, in turn, argue that these allegations are conclusory and unsupported by any admissible evidence. Defendants argue that "Plaintiff does not specify what defendant specifically engaged in the acts" of harassment and intimidation. (Defs.' Mot. Summ. J. 14.) Defendants further argue that "[r]egarding Plaintiff's claim for damage to her personal property, . . . Plaintiff has not produced sufficient evidence in the record regarding the specific property she seeks damages for; or her ownership or the property's value." (*Id.* 18.) Defendants contend that "[r]egarding Plaintiff's claim of libel and slander, summary judgment should be granted because Plaintiff has provided no specifics regarding the libel or slander that Plaintiff alleges that Defendants have engaged in." (*Id.*) The Court agrees.

The Second Circuit has indicated that summary judgment is appropriate where the moving party has shown that "little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1223–24 (2d Cir.1994).

In the instant case, Plaintiff—despite the advantages of a full period of discovery—has completely failed to adduce any evidence from which a rational jury could find in her favor. In response to Defendants' contention that her harassment claim is vague and conclusory, Plaintiff offers the unsworn statement that "[Defendant Yisrael], while aided and abetted by defendant Wormley even engaged in stalking the [Plaintiff], following her across the street from the temple and plac-

ing a video camera in her face." (Pl.'s Mem. Opp'n Summ. J. 3.) Even accepting these assertions as part of Plaintiff's case, New York law "does not recognize any independent tort for harassment," and the conduct complained of does not appear to give rise to any other cognizable cause of action or basis for tort liability. *N.Y. Stock Exch., Inc. v. Gahary*, 196 F.Supp.2d 401, 414 (S.D.N.Y.2002); *see also Edelstein v. Farber*, 27 A.D.3d 202, 811 N.Y.S.2d 358, 358 (2006) ("New York does not recognize a common-law cause of action for harassment.").

Likewise, when requested to produce "[c]opies of any documents related to slander and libel of the Plaintiff referred to in the complaint," Plaintiff replied: "To the extent that such documents exist they are in the possession of the defendants who unlawfully removed all documents from the [Building]." (Doc. Req. 2.) However, Plaintiff served no discovery requests on Defendants, and thus lost her opportunity to acquire these alleged documents and thus to present concrete evidence to the Court. Accordingly, the Court has nothing but Plaintiff's bare assertions of unspecified "slander and libel" as evidence that Defendants are guilty of these torts. *See, e.g., Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir.1991) (finding that "bald assertion[s], completely unsupported by evidence, did not satisfy [non-moving party's] burden" on summary judgment).

Plaintiff's assertion of properties lost in Long Island is even more vague and unsubstantiated. When Defendants requested that Plaintiff produce "[c]opes of all documents showing, listing, or evidencing how [Plaintiff] came to own the property that is the subject matter of Plaintiff's suit herein," Plaintiff replied: "Plaintiff objects to this Request on the ground that a direction to produce all documents showing, listing, or evidencing how [Plaintiff] came

to own subject property is overly vague." (Doc. Req. 2.) Due to this response, the Court has no evidence other than Plaintiff's unsubstantiated allegations that she ever possessed unnamed, undescribed properties on Long Island, or even that these properties ever existed. *Cf. Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (noting that "mere conclusory allegations or denials in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist" (internal quotation omitted)).

Because Plaintiff has utterly failed to demonstrate any material issues of fact with respect to her claims of harassment, libel, slander, and fraudulence conveyance of real property, these claims must be DISMISSED.

*V. Plaintiff's Claim of Property Sales in Alleged Violation of the Religious Corporations Law and the Not–For–Profit Corporation Law is Dismissed as Directly Duplicative of a Pending Action in New York State Court*

Plaintiff alleges that Defendants violated Article 12 of the Religious Corporations Law and Article 511 of the Not–For–Profit Laws in carrying out the sale of the Building to 31 Mount Morris Park West LLC. (Am. Compl. ¶ 29.) Plaintiff claims that "[w]ithout any knowledge or consent by the plaintiff pro se or Commandment Pillar members defendants submitted petitions to the [New York State Supreme] Court with their sworn statements that there were no other members of Commandment or Commandment Pillar and in fact did convince the Court and the New York State Attorney General to approve the sale." (*Id.*) Plaintiff alleges that following this approval of sale, "defendants fraudulently and without authority ... sold the [Building] to a Colleen Taylor and an entity co-owned by Colleen Taylor[;]

namely: 31 Mount Morris Park LLC." (*Id.* ¶ 28.) According to Plaintiff, this sale of the Building was "dastardly and unauthorized." (*Id.*) As relief, Plaintiff requests "an order rescinding the sale of the congregation property or properties." (*Id.* ¶ 38(e).)

Defendants, in turn, argue that "summary judgment should ... be granted because this [is] the subject of the same action before the New York State Supreme Court." (Defs.' Mot. Summ. J. 16.) The Court agrees.

■ The Supreme Court has repeatedly noted that, in certain situations, "[d]eclining jurisdiction in light of parallel or duplicative state court proceedings is in the interests of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (internal quotations omitted). "To determine whether abstention under *Colorado River* is appropriate, a district court is required to weigh six factors, with the balance heavily weighted in favor of the exercise of jurisdiction." *Village of Westfield v. Welch's,* 170 F.3d 116, 121 (2d Cir.1999) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 16, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). These factors are: (1) jurisdiction over a res or property; (2) inconvenience of the federal forum; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether state or federal law applies; and (6) whether the state forum will adequately protect the rights of the party seeking to invoke federal jurisdiction. *Id.*

■ Of these considerations, "[n]o single factor is necessarily decisive, ... and the weight to be given to any one factor may vary greatly from case to case, de-

pending on the particular setting of the case." *Id.* Additionally, a "necessary prerequisite to abstention under *Colorado River*" is "a finding that the concurrent proceedings are 'parallel.'" *Dittmer v. Cty. of Suffolk,* 146 F.3d 113, 117–18 (2d Cir.1998). "Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Id.* (internal quotation omitted).

In this case, jurisdiction over property is not an issue. Thus, for purposes of the *Colorado River* analysis, the first factor weighs slightly against abstention. The second factor, inconvenience of a federal forum, is also a non-issue, since a federal forum is just as convenient as a state forum for all parties in this case. Accordingly, the second factor also weighs against abstention.

The third factor, avoidance of piecemeal litigation, falls strongly in favor of abstention. Given the Supreme Court's acknowledgement that "the most important factor in our decision to approve the dismissal [in *Colorado River* ] was the 'clear federal policy ... [of] avoidance of piecemeal litigation,'" the Court is justified in giving this factor significant weight. *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 16, 103 S.Ct. 927 (quoting *Colorado River,* 424 U.S. at 819, 96 S.Ct. 1236). Plaintiff's claims against Defendants with respect to their allegedly unauthorized sale of the Building involve the same fundamental claims as the pendant action filed by Counsel Doré—Plaintiff's brother and counsel in the instant case—in New York State Supreme Court. (*See* Am. Compl. Ex. F (order to show cause why Orders permitting sale of the Building should not be vacated ("Order to Show Cause"); Affirmation of David M. Doré).)

The Court acknowledges that the New York State Supreme Court action was brought on behalf of the Commandment Keepers Ethiopian Hebrew Congregation of the Living God, Pillar and Ground of Truth, Inc., whereas this action is brought by Plaintiff as an individual. Moreover, the named Defendants in the two actions differ, with the exception of Defendant Wormley. Nonetheless, the two actions arise out of and depend on exactly the same facts, and both request the same relief: namely, an order rescinding the sale of the congregation property to 31 Mount Morris Park West LLC. Plaintiff participated in the state action by submitting an affirmation in support of vacatur (*see, e.g.,* Order to Show Cause 1,) and the motion was submitted by the same counsel representing Plaintiff in this action; *i.e.,* Plaintiff's brother. Accordingly, it is fair to characterize the two actions as parallel and "piecemeal litigation."

The Second Circuit has noted that "[m]aintaining virtually identical suits in two forums ... would waste judicial resources and invite duplicative effort." *Arkwright–Boston Mfrs. Mut. Ins. Co. v. City of New York,* 762 F.2d 205, 211 (1985); *see also Goldentree Asset Mgmt., L.P. v. Longaberger Co.,* 448 F.Supp.2d 589, 594 (S.D.N.Y.2006). To allow this action relating to the sale of the Building to 31 Mount Morris Park West LLC would frustrate the policy considerations so plainly set forth by the Supreme Court and the Second Circuit. The Court will, therefore, consider this factor as weighing heavily in favor of abstention.

The fourth factor, order in which jurisdiction was obtained, also favors abstention. When assessing this factor, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*

*Mem'l Hosp.,* 460 U.S. at 21, 103 S.Ct. 927. Counsel Doré filed the state action on June 4, 2007, approximately six months before he assisted Plaintiff with the filing of the Amended Complaint. (*See* Am. Compl. 12.) In the years since, moreover, much more progress has been made in the state action with respect to issues relating to the sale of the Building: namely, the vacatur of the original Orders granting permission to sell the Building, the filing of a new Petition for leave to sell the Building, and the filing of objections by Counsel Doré. By comparison, the sale of the Building is essentially a tangential issue in the instant action, and this Court has heretofore played no role in deciding the Building's fate. The Court therefore finds that this factor weighs in favor of abstention.

The fifth factor, whether state or federal law supplies the rule of decision, weighs in favor of abstention. *Cf. Moses H. Cone Mem'l Hosp.,* 460 U.S. at 25, 103 S.Ct. 927 (noting that "[a]s all diversity suits raise issues of state law, their presence does not weigh heavily in favor of surrender of jurisdiction"). Here, there are only issues of state law, specifically the Religious Corporations Law and the Not–For–Profit Corporation Law. No federal question is implicated. Thus, this factor slightly favors abstention. *See Wiggin & Co. v. Ampton Invs., Inc.,* 66 F.Supp.2d 549, 554 (S.D.N.Y.1999) (holding that "the absence of a federal question still slightly favors abstention.").

The sixth factor is the adequacy of procedures in state court to protect the plaintiff's rights. In assessing the adequacy of the state court forum, a federal court must determine whether the "parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone Meml. Hosp.,* 460 U.S. at 28, 103 S.Ct. 927.

Here, Plaintiff does not assert any reason why the New York State Supreme Court would be inadequate to protect her rights. In fact, Plaintiff has implicitly demonstrated her belief in the adequacy of the New York court to protect her rights by participating in the filing of a motion that, though more detailed, bears a strong resemblance to her complaint in this action with regard to the Building sale. *See Wiggin,* 66 F.Supp.2d at 554 ("Plaintiff's rights are adequately protected where it can assert ... the same claims raised here."). Thus, there is no reason to conclude that the New York court cannot adequately protect Plaintiff's rights, and therefore, this factor weighs in favor of abstention.

▆▆▆ Ultimately, the balance of *Colorado River* factors weighs heavily in favor of abstention with regard to this issue. Factors three, four, five, and six weigh in favor of abstention, while factors one and two weigh slightly against abstention. Overall, the balance of factors, especially the weight of the avoidance of piecemeal litigation factor, qualifies this case as an exceptional one in which abstention is warranted.

Because the balance of *Colorado River* factors weighs heavily in favor of abstention with regard to the issue of the sale of the Building to 31 Mount Morris Park West LLC, the Court abstains from jurisdiction on this issue and Plaintiff's claims respecting the sale are DISMISSED.

## CONCLUSION

For all the foregoing reasons, the above-captioned case is DISMISSED as to all claims. The Clerk of the Court is directed to close the case.

SO ORDERED.