[821 NYS2d 61]

In the Matter of ELLEN ASH PETERS, as Executrix of MARIA ASH, Deceased, Respondent, v SOTHEBY'S INC., Appellant.

First Department, September 14, 2006

---

**APPEARANCES OF COUNSEL**

*Stroock & Stroock & Lavan LLP*, New York City (*Charles G. Moerdler, Joseph L. Forstadt, Ernst H. Rosenberger* and *Meredith L. Strauss* of counsel), for appellant.

*Herrick, Feinstein LLP*, New York City (*Lawrence M. Kaye* of counsel), and *Rowland & Associates*, New York City, for respondent.

**OPINION OF THE COURT**

TOM, J.

At issue on this appeal is the viability of an action for the wrongful detention of a painting, *Strasse in Kragero* by Edvard Munch, so as to warrant a preaction disclosure order pursuant to CPLR 3102 (c) directing respondent Sotheby's Inc. to reveal the identity of the good-faith purchaser of the work at auction. Petitioner is the executrix of the estate of Maria Glaser, the wife and successor in interest to the alleged original owner of the artwork. This Court concludes that petitioner has failed to establish a meritorious cause of action so as to warrant disclosure. Under any alternative view of the facts, the estate's potential action against the good-faith purchaser is barred by either the statute of limitations or the equitable doctrine of laches.

The subject work of art was painted during the early part of the twentieth century. The artist gave the painting to Professor Curt Glaser, who had been a director of the State Museum in Berlin, Germany since the early 1920s. The work, along with four other paintings by Munch from Professor Glaser's personal collection, was included in a 1933 exhibition at the Berlin National Art Gallery. At its conclusion in July 1933, he signed a receipt confirming the Art Gallery's return of his paintings.

According to an affidavit by his sister-in-law, Professor Glaser's wife died "about one year prior to the advent of the Hitler

period." Due to the rise of the Nazi government, Professor Glaser was forced to resign his position with the State Museum and flee Germany. On May 27, 1933, he married his second wife, Maria, who wrote, "Immediately after our marriage we drove to Switzerland," where they ultimately rented a furnished house. Aside from 14 large crates containing artwork, porcelains, carpets and other valuables, the professor's substantial art collection was auctioned off in a forced sale during May 1933 to finance the couple's flight out of Nazi Germany.

The subject painting, however, was left in the care of Professor Glaser's brother, Paul, an art dealer, who apparently sold the work within the following year without first obtaining consent. In a letter to Edvard Munch dated December 25, 1936, Professor Glaser wrote:

> "I had to make a break with my brother, my only living relative, except for a few cousins, because he turned out to be a disloyal administrator of the property I left behind. I would have forgiven him everything except for the fact that he sold—behind my back—the painting, 'Street in Kragero' that you once gave as a gift to me and my deceased wife. It took me considerable effort to find out where the painting finally landed, but I tried in vain to buy it back, even when I was willing to sacrifice quite a bit for it. It is now hanging in a collection in Cologne."

It seems that the painting had been sold by Paul Glaser under circumstances that are not well documented. What is known is that it came into the possession of Albert Otten (formerly Ottenheimer), a steel magnate, who purchased it from Galerie Hermann Abels, a renowned art gallery located in Cologne, Germany. The Otten family maintained that the painting had been purchased through the gallery before 1929, directly from the artist, producing a card alleged to be from "The Museum of Modern Art Private Collection File." But when petitioner attempted to authenticate the document, the museum's deputy counsel responded that it had "no record of exhibiting *Strasse in Kragero*. As far as we can determine, the picture has never been in MoMA's possession." The staff located a card "that resembles (though is not identical to) the one that you sent me." Counsel noted that the museum's "unsigned, undated card identifies Albert Otten of West Englewood, New Jersey as the owner, and states that he acquired it from the artist 'Through Galerie Herm. Abels, Cologne/Rhine.'" The letter

concludes, "We do no[t] know when or why this card was created."

It is clear from contemporaneous documentary evidence, particularly the July 1933 gallery receipt, that Professor Glaser owned the work at the time it was returned from exhibition at the National Art Gallery. In addition, July 1934 correspondence from the National Art Gallery to Galerie Hermann Abels confirms that Glaser had been the owner of the painting at the time a Munch exhibition was held in Berlin in 1927, although the work had not been shown by the National Art Gallery at that time.

Albert Otten acquired works from the great German art centers of Cologne, Berlin and Hanover, amassing a large collection. In 1937, he, too, was forced to flee Germany but, unlike Professor Glaser, Otten was able to send many of his paintings out of the country, first to Switzerland and, eventually, to the United States. Works from his collection, including *Strasse in Kragero*, were exhibited at Drew University in 1958, Brandeis University in 1959, Wesleyan University in 1960 and the Portland Museum of Art from October 9, 1987 to January 3, 1988.

Professor Glaser died in Lake Placid, New York on November 23, 1943, at which time his interest in the painting, if any, passed to his wife, Maria Glaser (later Maria Ash), and upon her death to her estate, the executrix of which is petitioner Ellen Ash Peters. This controversy arose when the painting was consigned by the Otten family to respondent Sotheby's and sold at auction in June 2002 for $1.5 million. Petitioner sought an order pursuant to CPLR 3102 (c) directing respondent to disclose the identity of the purchaser and the whereabouts of the painting. In support of her application, petitioner asserted, in substance, that Professor Glaser had once owned the painting, attaching the July 1933 receipt from the Berlin National Art Gallery as proof.

Respondent opposed the motion, noting that it had conducted "substantial research" into the ownership of the painting, which was not reported as stolen or missing and to which no claim of ownership has been made to "any appropriate registry or entity," concluding that the sale of the work "was the result of an intra-family dispute." It attached affidavits submitted in connection with a restitution claim made by Professor Glaser's wife, Maria, which did not include any items that her brother-in-law, Paul, had sold. Likewise, an affidavit submitted by Paul's

wife, Elly Glaser, in support of the claim, made no mention of works entrusted to her husband as being among those that were lost or alleged to have been auctioned at a near total loss. Respondent asserted that the

> "two women would have been intimately aware of the rift between the Glaser brothers resulting from the sale of *Strasse in Kragero*. Maria (Glaser) Ash's omission of *Strasse in Kragero* from her claim for restitution for artwork and other property lost under Nazi Germany reveals that Paul Glaser had not sold it under the duress of the Nazi regime."

Respondent emphasized that there is no evidence of a claim of ownership by any member of the Glaser family from the mid-1930s until December 2003, a period of nearly 70 years.

In response, petitioner charged that the Otten family had created a false provenance for the painting by misrepresenting that it was obtained through a direct purchase from the artist, thus concealing Professor Glaser's ownership of the work during the early 1930s. Petitioner speculated, "Had Sotheby's asked, or properly researched the archives of the National Galerie, it would have found that Glaser, not Otten, was the owner of the Painting at that time, and Sotheby's would have undoubtedly removed the Painting from the auction pending clarification of the ownership issue." Finally, petitioner asserted that the potential equitable defense of laches was not part of her prima facie case of wrongful detention against the purchaser at auction and thus may not be asserted in opposition to her application for preaction disclosure.

In granting the application, Supreme Court rejected the contention that petitioner had failed to demonstrate a meritorious cause of action, stating that the moving papers adequately frame a complaint for wrongful detention with the exception of the identity of the party who is currently in possession of the painting. The court did not consider the statute of limitations and the issue of laches.

The estate of Maria Ash seeks to recover possession of the painting, *Strasse in Kragero*, from an unknown person who purchased the work in good faith at auction. Whether styled as an action to recover a unique chattel (CPLR 7109) or for wrongful detention (*Rogers v Conde*, 67 App Div 130 [1901]), the action sounds in replevin (CPLR art 71; *Solomon R. Guggenheim Found. v Lubell*, 153 AD2d 143, 145 [1990], *affd* 77 NY2d 311 [1991]). To sustain a cause of action for wrongful detention,

petitioner is required to establish that her decedent was entitled to immediate possession of the property, that she is the duly appointed representative of the decedent's estate, and that demand for the return of the property has been made and refused by the possessor of the chattel (*Rogers*, 67 App Div at 131). A plaintiff has three years from the refusal to return the chattel in which to commence an action for its recovery (CPLR 214 [3]; *Guggenheim*, 153 AD2d at 148, 153). Demand upon, and refusal of, the person in possession of the chattel to return it being essential elements of a cause of action in replevin (*Menzel v List*, 22 AD2d 647 [1964]), petitioner has established a valid basis for seeking preanswer disclosure "to aid in bringing an action" (CPLR 3102 [c]; *see also* CPLR 7112).

That, however, is not the end of the inquiry. Preanswer disclosure will only be directed upon a showing that the petitioner has a meritorious cause of action, in addition to a need for the information (*Liberty Imports v Bourguet*, 146 AD2d 535, 536 [1989]; *see also Holzman v Manhattan & Bronx Surface Tr. Operating Auth.*, 271 AD2d 346, 347 [2000]). As a general rule, "the adequacy of merit rests within the sound discretion of the court" (*Mediavilla v Gurman*, 272 AD2d 146, 148 [2000]), the exercise of which extends to appellate review (*see Smith v Daca Taxi*, 222 AD2d 209, 211 [1995]).

On appeal, the parties chiefly contest whether it is appropriate to consider the doctrine of laches in assessing the merit of petitioner's cause of action against the unknown purchaser at auction. Petitioner also argues that Maria Glaser, who was much younger than her husband, could not have been expected to be familiar with all the artwork in the professor's collection and that no import should be accorded to her failure to include the subject painting in her claim for restitution.

Respondent answers that a demand for return of the painting was made in the mid-1930s by Professor Glaser when he sought to repurchase it. Respondent conjectures that it was Albert Otten from whom the professor demanded the painting's return. Thus, respondent contends, the statute of limitations began to run some 70 years ago with Otten's refusal of the demand made upon him.

Support for respondent's theory is entirely circumstantial. While Glaser's 1936 letter to the artist mentions that the painting "is now hanging in a collection in Cologne," and Otten purchased the work from Galerie Hermann Abels in that city, it is equally plausible that Glaser attempted to buy the painting

from the gallery prior to its acquisition by Otten. However, the identity of the party who had possession of the work is not material to a determination of the merit of the estate's cause of action against the defendant it seeks to identify. Under any analysis, petitioner cannot make out a prima facie case for recovery of the Munch.

It is essential to a cause of action for return of a chattel "that the plaintiff is entitled to possession by virtue of facts set forth" (CPLR 7102 [c] [1]). It is petitioner's theory that the painting was converted by Paul Glaser, the art dealer, when he apparently sold it without prior consent and that Albert Otten thereupon purchased a stolen work of art, which the Otten family ultimately consigned to respondent for sale at auction. Thus, she now asserts, "The Estate is the owner of the Painting and seeks to bring an action against the purchaser to recover it."

While it might be plausible to regard Paul Glaser's sale of the painting as an act of conversion, it is clear that Professor Glaser did not treat it as such. Though he had contemporaneous knowledge of the disposition of the painting and the identity of the person who possessed it, the professor failed to report a theft and, indeed, did not regard the painting as having been stolen. His attempt to repurchase the painting, rather than demand its return—whether from Otten, Galerie Hermann Abels or some unknown third party—is tantamount to a concession of the possessor's rightful ownership. If Professor Glaser did not treat the painting as stolen in 1936, his wife's estate will not be heard to speculate, some 70 years after the fact, that it might have been misappropriated and that its acquisition at auction by the unidentified prospective defendant was therefore tainted. As we succinctly stated in *Guggenheim* (153 AD2d at 153), "if defendant is a good-faith purchaser and the [painting] was not stolen, then defendant's title is superior to plaintiff's."

The record evidence indicates that Albert Otten acquired the painting as a result of its transfer from one art dealer to another. As the "administrator of the property" left behind by his brother and a dealer in works of art, Paul Glaser had the authority (apparent or actual) to convey the artwork (*see Porter v Wertz*, 68 AD2d 141, 147-148 [1979], *affd* 53 NY2d 696 [1981]). The July 1934 inquiry concerning the ownership of the painting made to the National Art Gallery suggests that Galerie Hermann Abels was conducting research into its provenance in connection with its purchase at that time. Having confirmed Professor Glaser's ownership, the purchase by a respected art gallery

from a person who was not only an art dealer but the owner's brother cannot be faulted. Finally, the professor's offer to repurchase the work, documented in his 1936 letter to the artist, indicates that while he might not have been pleased by the sale, he never disputed its legitimacy (*cf. Kunstsammlungen zu Weimar v Elicofon*, 536 F Supp 829, 833 [ED NY 1981], *affd* 678 F2d 1150 [2d Cir 1982] [possessor of stolen property cannot transfer good title to bona fide purchaser for value]). In short, the record does not support petitioner's theory that *Strasse in Kragero* was stolen, and the Otten family's title is therefore superior to that now claimed by the estate (*Guggenheim*, 153 AD2d at 153). Thus, petitioner has not made out a prima facie case for the estate's claim to immediate possession.

Even if this Court were to accept petitioner's claim that the work was converted, the statute of limitations and the doctrine of laches bar this action against respondent. CPLR 214 (3) provides that an action to recover stolen property must be brought within three years after the action accrues. Where replevin is sought against the party who converted the property, the action accrues on the date of conversion (*Sporn v MCA Records*, 58 NY2d 482, 488 [1983]). Where, as here, the action is brought against a party who purchased the property in good faith, for value and without notice of the conversion, the action accrues only upon the refusal of a demand for its return (*Menzel*, 22 AD2d at 647). This is "because a good-faith purchaser of stolen property commits no wrong, as a matter of substantive law, until he has first been advised of the plaintiff's claim to possession and given an opportunity to return the chattel" (*Guggenheim*, 153 AD2d at 147).

Because the statute of limitations does not begin to run until a demand is made and refused, there is a potential for a plaintiff to indefinitely extend the statute of limitations by simply deferring the making of the requisite demand. In *Austin v Board of Higher Educ. of City of N.Y.* (5 NY2d 430 [1959]), the plaintiffs were aggrieved by the refusal of the defendant to accede to their demand for reinstatement to their former positions. The Court of Appeals noted that the requirement to make a demand and receive a refusal before commencing a proceeding "does not mean that the aggrieved party can, by delay in making his demand, extend indefinitely the period during which he is required to take action" (*id.* at 442). This principle is equally applicable to a demand to return stolen property (*see Heide v Glidden Buick Corp.*, 188 Misc 198 [1947]).

However, the degree of diligence exercised by the true owner in attempting to locate the stolen property and identify its owner is inapplicable to the statute of limitations. Despite some attempt to engraft a due diligence requirement onto the statute (*see DeWeerth v Baldinger*, 836 F2d 103 [2d Cir 1987], *cert denied* 486 US 1056 [1988]), the "demand and refusal rule . . . remains the law in New York" (*Solomon R. Guggenheim Found. v Lubell*, 77 NY2d 311, 319 [1991]). Rather, reasonable diligence is pertinent in the context of a laches defense, which requires that the party currently in possession of a chattel demonstrate prejudice sustained on account of the delay in the commencement of the action against it (*id.* at 321).

If it is assumed that the subject Munch was converted, Professor Glaser's attempt to recover it can be regarded as either a demand for its return, as respondent contends, or merely an attempt to reacquire it from a legitimate purchaser, as the documentary evidence suggests. In the former case, the statute of limitations began to run when the party in possession of the painting refused to return it and, as respondent asserts, the applicable period of limitation expired some 70 years ago.

Alternatively, petitioner's demand for preaction discovery is barred by the doctrine of laches. Even if the professor's endeavors are deemed to constitute less than a demand for the return of the Munch, his failure to make a demand raises considerations of due diligence in the Glasers' attempts to recover the artwork. In *Wertheimer v Cirker's Hayes Stor. Warehouse* (300 AD2d 117 [2002]), which is factually similar to the instant case, a painting owned by the plaintiff's grandfather was misappropriated by one Ehrlich, to whom it had been entrusted. The grandfather abandoned legal proceedings against Ehrlich during World War II and withdrew any claim for loss of the painting against the German government. This Court held that the Wertheimer family's lack of due diligence in pursuing the return of the painting for nearly half a century substantially prejudiced the bona fide purchaser by "making it virtually impossible" to demonstrate that good title had been acquired by its predecessors in interest (*id.* at 118).

In the matter at bar, the documentary evidence shows that Professor Glaser had contemporaneous, actual knowledge of the facts now asserted by petitioner to constitute conversion; he learned the identity of the party in possession of the painting and undertook negotiations. But rather than demand return of

the Munch, the professor attempted to effect its repurchase. Subsequently, Maria Glaser made no mention of the painting in her claim seeking restitution from the German government. The Glasers' failure to assert any claim to ownership of the work provided the painting with its provenance. That is, the very default by the Glasers in timely asserting their possessory rights provided legitimacy to Albert Otten's acquisition and eventuated the present, belated attempt to recover the painting by the Glaser estate. Furthermore, neither the estate nor anyone in the Glaser family made any additional demand or otherwise attempted to recover the painting from the Ottens, even though both families lived in Manhattan and the painting was exhibited as part of the Otten collection at prominent museums, galleries, and universities during the second half of the twentieth century.

If, as the parties seem to accept, the documentary evidence is insufficient to establish Albert Otten's legitimate ownership of the work, the Otten family will sustain prejudice resulting from the inability to establish that it acquired good title (*id.*). Where the due diligence of the original owner of a work of art raises questions of fact, the issue of whether its lack of diligence operated to the prejudice of the party currently in possession of the artwork is appropriately resolved at trial (*Guggenheim,* 77 NY2d at 321). However, where the original owner's lack of due diligence and prejudice to the party currently in possession are apparent, the issue may be resolved as a matter of law (*Wertheimer,* 300 AD2d at 118). The delay by the Glaser family and the estate in asserting any claim of ownership during the approximately 70-year odyssey of *Strasse in Kragero* has prejudiced the good-faith purchaser since none of the parties to the original sale of the painting—Professor Glaser, Albert Otten and Paul Glaser—are alive. Finally, the doctrine of unclean hands does not preclude consideration of the laches defense because the Otten family's alleged attempt to create a false provenance for the painting did not prejudice respondent (*id.* at 118-119).

Accordingly, the order of the Supreme Court, New York County (Charles J. Tejada, J.), entered June 14, 2005, which granted petitioner's application for preaction discovery pursuant to CPLR 3102 (c) and directed respondent to answer petitioner's interrogatory seeking the identity of the good-faith purchaser of the painting, *Strasse in Kragero,* should be re-

versed, on the law, the facts and in the exercise of discretion, without costs, the order vacated, the application denied and the petition dismissed.

BUCKLEY, P.J., SULLIVAN, NARDELLI and McGUIRE, JJ., concur.

Order, Supreme Court, New York County, entered June 14, 2005, reversed, on the law, the facts and in the exercise of discretion, without costs, the order vacated, the application denied and the petition dismissed.