[901 NYS2d 603]

Davɪᴅ Mɪʀᴠɪsʜ, Respondent, v Hᴀɴɴᴏ D. Mᴏᴛᴛ et al., Appellants.

First Department, May 27, 2010

---

## APPEARANCES OF COUNSEL

*Rottenberg Lipman Rich, P.C.*, New York City (*Harry W. Lipman* of counsel), for appellants.

*Carter Ledyard & Milburn LLP*, New York City (*Gary D. Sesser, Ronald D. Spencer, Susan B. Kalib* and *Judith M. Wallace* of counsel), for respondent.

## OPINION OF THE COURT

DeGrasse, J.

The petition's prayer for relief calls for a declaration that petitioner is the owner of a 1,100-pound bronze sculpture, by the noted sculptor Jacques Lipchitz, known as *The Cry*. In addition, the petition sets forth claims sounding in conversion, replevin and constructive trust, and calls for ancillary relief under the Surrogate's Court Procedure Act. Petitioner claims that the sculpture was gifted to his assignor, Biond Fury, by the decedent, Yulla H. Lipchitz. The gift was allegedly effected by way of a handwritten instrument which reads: "I gave this sculpture 'The Cry' to my good friend Biond Fury in appreciation for all he did for me during my long illness. With love and my warm wishes for a Happy Future, Yulla Lipchitz/October 2, 1997, New York." The writing is on the back of a photograph of the sculpture. According to Fury's deposition, the decedent gave him the writing in October 1997. Fury further testified that at that time, the sculpture was being stored at the Michael Leonard Warehouse in New York at his expense. According to Fury, the sculpture remained at the warehouse until 1998 when respondent Mott, the decedent's son and executor of her will, had it removed from the warehouse and placed with Marlborough Gallery, a New York-based art gallery. Fury testified that he did not remember authorizing respondent to remove *The Cry* from the warehouse. The decedent died on July 20, 2003, and her will was admitted to probate on August 13, 2003.

By letter from counsel dated March 9, 2004, Fury asserted his claim of ownership of the sculpture and demanded its immediate delivery by the decedent's estate. This letter represents

Fury's first such demand upon respondent. On September 15, 2005, Fury sold his purported interest in the sculpture to petitioner. By letter dated October 20, 2005, respondent's counsel informed petitioner's counsel that the sculpture had been sold "over a year ago." In July 2006, petitioner brought the instant proceeding. Respondent moved and petitioner cross-moved for summary judgment. Surrogate's Court denied respondent's motion and granted petitioner's cross motion, finding that the decedent intended to and did make a gift of *The Cry* to Fury who accepted it.

The elements of a gift are intent on part of the donor to make a present transfer, actual or constructive delivery to the donee, and acceptance by the donee, and the proponent of a gift has the burden of proving each of these elements by clear and convincing evidence (*Gruen v Gruen*, 68 NY2d 48, 53 [1986]). The requirement of delivery may be satisfied by physical delivery of the gift itself or a constructive or symbolic delivery such as by an instrument sufficient to divest the donor of dominion and control over the property (*id.* at 56). What is sufficient to constitute delivery "must be tailored to suit the circumstances of the case" (*Matter of Szabo*, 10 NY2d 94, 98 [1961]). Hence, a gift instrument, such as the one alleged in this case, would be an appropriate vehicle for the symbolic delivery of a gift consisting of a monumental work of art such as *The Cry* (*see e.g. Hawkins v Union Trust Co. of N.Y.*, 187 App Div 472 [1919]). For reasons that follow, however, CPLR 4519 stands as a bar to summary judgment in favor of petitioner.

■ A party moving for summary judgment must sufficiently demonstrate entitlement to judgment, as a matter of law, by tendering evidentiary proof in admissible form (*LaGrega v Farrell Lines*, 156 AD2d 205 [1989]). The record does not support petitioner's assertion that the decedent's delivery of the gift instrument to Fury is undisputed. To be sure, the fact of the gift (which must include delivery) is specifically denied in respondent's answer. Fury's testimony is the only evidence of the decedent's delivery of the gift instrument to him. This testimony, however, is inadmissible under CPLR 4519 because Fury is the person from whom petitioner derives his interest. Evidence that is inadmissible under CPLR 4519 cannot be used to support a motion for summary judgment (*see Beyer v Melgar*, 16 AD3d 532 [2005]). It was, therefore, error for the court to grant petitioner's cross motion for summary judgment. At the same time, CPLR 4519 may not be asserted in support of

respondent's motion for summary judgment (*see Salemo v Geller*, 278 AD2d 104 [2000], citing *Phillips v Kantor & Co.*, 31 NY2d 307, 313 [1972]).

In support of his motion, respondent argues that the gift is invalid because petitioner has proffered no evidence that the decedent ceded dominion and control over the sculpture to Fury. Here, respondent relies upon a November 1998 letter from Marlborough Gallery to the French Minister of Culture and Communication. The letter reflects an arrangement "with the Lipchitz family" whereby Marlborough loaned *The Cry* to the Government of France as an exhibit for a period of three years or until the decedent's death, whichever occurred first. The letter speaks of the possibility of a sale of the sculpture by the Lipchitz family at the end of the loan. It also provides for the return of the sculpture to the family in the event it were not purchased. Respondent testified that at the completion of the exhibit at the Jardin du Palais Royal in Paris, he consented, on behalf of the decedent, to a display of the sculpture at the Jardin des Tuileries, also in Paris.

Respondent relies upon this Court's decision in *Anagnostou v Stifel* (168 AD2d 256 [1990]) to support his argument that the decedent did not part with dominion and control over the sculpture. The decedent in *Anagnostou* allegedly made a gift of six paintings by a written instrument given to the donees while the paintings were on exhibit in Italy. A subsequent letter from the decedent's manager, purportedly acting on behalf of the decedent and his niece, directed the Italian exhibitor to return the paintings to New York. In denying the parties' motion and cross motion for summary judgment, we found an issue of fact as to

> "whether decedent continued to exercise personal dominion and control over the paintings, having ordered them to be returned to New York upon the close of the exhibition in Milan, or whether that directive emanated from some other source in contradiction to the claimed earlier expressed declaration that the six paintings in question belonged to plaintiffs, his faithful servants" (*id.* at 257).

In keeping with *Anagnostou*, we find under these analogous facts, that Marlborough's letter to the French Minister could have raised a triable factual issue as to whether the decedent would have delivered the gift instrument with the requisite donative intent, if indeed she delivered it at all (*see Gruen*, 68

NY2d at 53). Notwithstanding respondent's argument, *Anagnostou* is not dispositive of his motion. Nevertheless, petitioner's claims are barred by the statute of limitations.

■ Although declaratory judgment actions are typically governed by a six-year statute of limitations under CPLR 213 (1), if the underlying dispute could have been resolved through an action or proceeding for which a specific, shorter limitations period governs, then such shorter period must be applied (*Trager v Town of Clifton Park*, 303 AD2d 875, 876 [2003]). Here, petitioner not only could have, but in fact did, avail himself of the remedy of claims sounding in conversion and replevin. Accordingly, this proceeding is subject to the three-year statute of limitations for such claims (*see* CPLR 214 [3]).

The parties differ as to when petitioner's conversion and replevin claims accrued. Conversion is the "unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights" (*Employers' Fire Ins. Co. v Cotten*, 245 NY 102, 105 [1927]). The basis of an action for conversion is the denial or violation of the plaintiff's dominion over, rights to, or possession of property (*Sporn v MCA Records*, 58 NY2d 482, 487 [1983]). Hence, a conversion cause of action accrues upon the occurrence of "[s]ome affirmative act—asportation by the defendant or another person, denial of access to the rightful owner or assertion to the owner of a claim on the goods, sale or other commercial exploitation of the goods by the defendant" (*State of New York v Seventh Regiment Fund*, 98 NY2d 249, 260 [2002]). In *Davidson v Fasanella* (269 AD2d 351 [2000]), the plaintiff purchased a painting from the defendant's decedent and placed it with an art gallery for exhibit in 1973. In 1995, the plaintiff allegedly discovered that the gallery had delivered the painting to the decedent, and brought suit after his demand for its return was refused. The court found the plaintiff's conversion cause of action to have accrued in 1977 when the gallery delivered the painting to the decedent.

Based on the foregoing case law and assuming there was a gift, we find that the affirmative act of asportation required by *Seventh Regiment* would have occurred no later than 1998, when respondent had *The Cry* removed from the Michael Leonard Warehouse without Fury's permission, delivered to Marlborough and then loaned to the French Government, all in the name of the Lipchitz family. Whether petitioner was aware of respondent's acts is immaterial. Accrual runs from the date the

conversion takes place, and not from discovery or the exercise of diligence to discover (*Vigilant Ins. Co. of Am. v Housing Auth. of City of El Paso, Tex.*, 87 NY2d 36, 44 [1995]). Petitioner's conversion claim would thus be time-barred. The replevin claim would fare no better. Where replevin is sought against the party who converted the property, the action accrues on the date of conversion (*Matter of Peters v Sotheby's Inc.*, 34 AD3d 29, 36 [2006], *lv denied* 8 NY3d 809 [2007]).*

Petitioner next asserts that the statute of limitations was restarted in 2004 when respondent purportedly sold *The Cry* to an affiliate of Marlborough in Liechtenstein. Here, petitioner cites to *Stanley v Morgan Guar. Trust Co. of N.Y.* (173 AD2d 390 [1991]) for the proposition that where there are multiple conversions, the date of the latest conversion is applicable in determining whether the statute of limitations has expired. In *Stanley,* the defendant broker purchased and resold bearer bonds that had been acquired by and stolen from the plaintiff in 1983. In 1987 and 1988, the broker reacquired some of the stolen bonds. We held that the broker failed to demonstrate that the reacquisition of the bonds did not constitute a further act of conversion, thus extending the statute that ran on the original purchase. This case is distinguishable because, notwithstanding the loan of *The Cry* to the French Government, respondent's assumption and exercise of the right of ownership of the sculpture remained unbroken from 1998 until the purported sale in 2004. By contrast, the broker in *Stanley* had no dominion over the bearer bonds between their sale in 1983 and their reacquisition in 1987-1988.

Petitioner's next argument is that the statute of limitations had no bearing on the issue for determination before the Surrogate's Court. In a related action, the parties stipulated that *The Cry* would be held in escrow pending joint instruction from petitioner and respondent or "a final non-appealable judgment of a New York State Court determining ownership of the Sculpture." Based upon the stipulation, petitioner takes the position that the statute of limitations defense is not relevant to the issue of title or ownership. This position is untenable. For reasons discussed above, petitioner's claim for a declaration regarding the ownership of *The Cry* is subject to the three-year

---

* Although not time-barred, petitioner's constructive trust claim must also be dismissed because there is no allegation of a confidential or fiduciary relationship between the parties, an element of the claim (*see e.g. Panetta v Kelly,* 17 AD3d 163, 165 [2005], *lv dismissed* 5 NY3d 783 [2005]).

statute of limitations applicable to conversion claims (*see Trager*, 303 AD2d at 876). Moreover, respondent did not waive his statute of limitations defense by joining in the stipulation. To be valid, a waiver must be explicit (*see Silber v Silber*, 99 NY2d 395, 404 [2003], *cert denied* 540 US 817 [2003]). Here, there was no waiver because the stipulation does not even mention the statute of limitations defense.

 It does not avail petitioner to argue that his conversion and replevin claims were no longer before the court by the time it had rendered its decision. Petitioner claims to have discontinued those claims by way of a letter to the court submitted while the motion was sub judice. Except where specifically superseded by the SCPA, the CPLR applies to proceedings in Surrogate's Court (*see* SCPA 102). By operation of CPLR 3217, the conversion and replevin claims could have been discontinued only by stipulation, order or notice served before joinder of issue or within 20 days after service of the petition, whichever is earlier. None of these occurred here. Therefore, petitioner's purported discontinuance of these claims was ineffective. We have considered the parties' remaining contentions and find them to be lacking in merit.

Accordingly, the decree of the Surrogate's Court, New York County (Renee R. Roth, S.), entered on or about December 31, 2008, which granted petitioner's cross motion for summary judgment finding that the decedent's inter vivos gift of certain art work was valid, and denied respondents' motion for summary judgment dismissing the petition, should be reversed, on the law, with costs, and respondent's motion granted to the extent of declaring that petitioner's claim of ownership of *The Cry* and his claims for damages are barred by the statute of limitations, and petitioner's cross motion denied.

MAZZARELLI, J.P., NARDELLI, CATTERSON and ROMÁN, JJ., concur.

Decree, Surrogate's Court, New York County, entered on or about December 31, 2008, reversed, on the law, with costs, respondents' motion granted to the extent of declaring that petitioner's claims of ownership of *The Cry* and his claims for damages are barred by the statute of limitations, and petitioner's cross motion denied.