| **Avni v Sotheby's** |
|:---:|
| 2024 NY Slip Op 30004(U) |
| January 2, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 154555/2023 |
| Judge: Arlene P. Bluth |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    **HON. ARLENE P. BLUTH**                    PART                14
                                        *Justice*

-------------------------------------------------------------------------------X

MORDECHAI AVNI, ODED AVNI, MICHAELA IRO

                         Petitioners

                    - v -

SOTHEBY'S,

                         Respondent.

-------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 154555/2023 |
| MOTION DATE | 12/13/2023 |
| MOTION SEQ. NO. | 001 |

**DECISION + ORDER,
JUDGMENT ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 3, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91,

were read on this motion to/for           DISCOVERY - PRE-ACTION           .

The petition for pre-action disclosure is granted as described below.

**Background**

This special proceeding arises out of petitioners' demand for the return of a painting by

Giovanni Battista Tiepolo. They claim they are all lawful heirs of Dr. Otto and Lili Fröhlich,

who owned the painting prior to World War II. Petitioners insist that the Nazis stole the painting

and bring this petition to discover the name of the individual who acquired the painting from

respondent after an auction. Petitioners contend that respondent is the last known possessor of

the painting and that it was put up for sale at public auction in New York on May 22, 2019.

Petitioners detail that the Fröhlichs resided in Austria and ran an art gallery there before

they were forced to flee in 1938 and left for London. They explain that during the late 1930s, the

Nazis forbade Jews from engaging in any business activities and forced them to sell assets, often

**154555/2023   AVNI, MORDECHAI ET AL vs. SOTHEBY'S**                    **Page 1 of 12**
 **Motion No. 001**

1 of 12

at below-market prices for the benefit of non-Jewish sellers and buyers, as well as the Nazi government. In many of these deals, the Jewish owner received nothing.

Petitioners observe that Otto transferred the subject painting to another art gallery in Vienna for safekeeping as a trustee in light of his forced migration and the restrictive rules barring Jews from participating in society. They contend that they have engaged in extensive research to document the history of this artwork. They submit the affidavit of Jonathan James Palmer, the founder of an entity that assists individuals with recovering such lost property (NYSCEF Doc. No. 6).

On November 22, 1938 Walter Russell was appointed as the provisional administrator of the Fröhlichs' gallery after they fled to London. In January 1939, Robert Herzig, a proprietor from another gallery in Vienna, wrote a letter to Mr. Russell to confirm that he had received the stock from the Fröhlichs' gallery, which included the subject painting. Mr. Russell was subsequently dismissed as administrator for the gallery in early February 1939 and another individual, Otto Faltis, was appointed as the liquidator for the gallery. Petitioners contend he was a Nazi collaborator.

Mr. Herzig sent a letter in January 1941 to Mr. Faltis (apparently without Otto Fröhlich's permission) requesting that three artworks be sold from Otto's collection to cover his purported debts to Mr. Herzig's gallery. The subject painting was then sold at auction in March 1941 for allegedly less than a third of the going rate for a painting by this artist.

Petitioners contend that even though this painting was allegedly sold to cover some debts, it was nevertheless a "forced sale" because Otto Fröhlich's gallery was forced to close by the Nazis, the sale price was substantially lower as a result and Otto Fröhlich did not receive the excess proceeds.

**154555/2023   AVNI, MORDECHAI ET AL vs. SOTHEBY'S**
**Motion No.  001**

**Page 2 of 12**

2 of 12

[* 2]

According to petitioner, Otto Fröhlich tried to recover the painting after World War II and he wrote a letter in March 1947 in which he expressed a desire to get certain paintings back, including the one that is the subject of this proceeding. The painting was then put into an index in Munich in August 1947; petitioners add that a notation from August 18, 1947 for the painting states that it was "from the possession of the Gallery Dr. Otto Fröhlich." They add that Otto died in 1947 but he was never able to locate the painting.

Petitioners contend that the painting reappeared in 2001 when respondent offered it for sale at an auction in London. They observe that respondent described the provenance as "Property from a Distinguished Private Collection." It next appeared on the market at another auction held by respondent in 2019 in New York. Petitioners contend that the provenance listed for the artwork in 2019 was incorrect as it listed a small family-run gallery in Germany as the former possessor instead of including Julius Bohler (Hitler's former art dealer) as the former owner.

Petitioners insist that if respondent had ensured that the provenance reached back far enough (petitioners observe that the gallery in Germany was not founded until 1972), it would have likely led to more investigation into the painting's history given the connection to the Nazis. They also maintain that the result of the incomplete provenance was that the painting was sold to another anonymous collection.

Petitioners assert that they did not learn about the 2019 sale until June 2020 and that their representatives contacted respondent in August 2021. They detail how they had numerous communications with respondent in an attempt to identify the current owner of the painting but they were unable to elicit the information from respondent.

**154555/2023   AVNI, MORDECHAI ET AL vs. SOTHEBY'S**          **Page 3 of 12**
**Motion No.  001**

[* 3]

3 of 12

Petitioners maintain that they have a valid cause of action for replevin. They insist that this action is timely because there has not been a demand for the return of the artwork as petitioners do not yet know who has the painting. They also claim they have a valid claim for conversion.

In opposition, respondent argues that neither the petitioners nor any other Fröhlich heirs made any efforts to seek the return of the painting. It claims that they did not include the painting on a registry that could have alerted respondent or others about their claims. Respondent claims that the petition does not explain how respondent could have been aware of petitioners' claim related to the painting prior to 2021 or why they did not seek the return of the painting when it was put up for auction in 2001.

Respondent argues that when it learned of petitioners' claims, it started an investigation into the painting and insists that petitioners do not have a meritorious claim. It argues that the heirs of an earlier owner, Adele Fischel, from whom petitioners claim Dr. Fröhlich acquired the painting, might have a claim. Respondent insists that it treats all information about participants at an auction as confidential and that it cannot disclose such details without express permission from those individuals.

Respondent insists that a Viennese gallery (Galerie Sanct Lucas) purportedly held the painting as security for a debt owed by Dr. Fröhlich and the gallery. Respondent argues that Dr. Fröhlich had no continuing claim to the painting because Galerie Sanct Lucas sold it to repay his gallery's debts and that is why neither petitioners nor anyone else has made a claim for the painting over the last 70 plus years.

Respondent claims that the doctrine of laches prevents petitioners from bringing a claim about the painting and emphasize that the painting has never been reported as looted or stolen.

**154555/2023  AVNI, MORDECHAI ET AL vs. SOTHEBY'S**
**Motion No.  001**

**Page 4 of 12**

4 of 12

[* 4]

It argues that this delay has prejudiced the current good faith owner and that the auction would have been paused had these claims been timely raised. Respondent also argue that if the Court is inclined to grant the petition, the information disclosed should be limited to the purchase and that information about the seller at the 2019 auction is irrelevant to petitioners' claims.

In reply, petitioners emphasize that they have met the standard for pre-action disclosure by alleging cognizable causes of action. They insist that they showed that Otto Fröhlich owned the painting, that he lost possession of it because of Nazi persecution and they are his heirs. Petitioners point out that Dr. Fröhlich did seek the return of his painting but was unable to get it back prior to his death in 1947.

Petitioners argue that the existence of another person who might have a claim to the painting (the heirs of Adele Fischel, who, according to petitioners, was Dr. Fröhlich's cousin) is not a basis to deny the petition. They also argue that the doctrine of laches has no bearing on this proceeding and that there was no unreasonable delay. Petitioners allege that they learned about this painting in 2020 and 2021 and asserted their claim promptly thereafter.

With respect to respondent's assertion that the information is confidential, petitioners point out that respondent attached no policy, legal agreement or condition of sale relating to this painting or any evidence that the purchaser objects to the disclosure. Petitioners also point out that the HEAR Act permits a 6-year statute of limitations from the date of discovery for Nazi-looted artwork and so a possible conversion claim may lie against the seller.

The Court did not consider the letters (NYSCEF Doc. Nos. 92, 93) filed by both parties as neither party was granted permission to file a sur-reply.

**154555/2023   AVNI, MORDECHAI ET AL vs. SOTHEBY'S**
**Motion No.  001**

**Page 5 of 12**

**Discussion**

"Pre-action discovery is not permissible as a fishing expedition to ascertain whether a cause of action exists and is only available where a petitioner demonstrates that he or she has a meritorious cause of action and that the information sought is material and necessary to the actionable wrong. Generally, the determination of whether a party has demonstrated merit lies in the sound discretion of the trial court" (*Bishop v Stevenson Commons Assocs.*, L.P., 74 AD3d 640, 641, 905 NYS2d 29 [1st Dept 2010] [internal quotations and citations omitted]).

The Court grants the petition. Petitioners have stated viable causes of action for both replevin and conversion. "A cause of action sounding in replevin must establish that the defendant is in possession of certain property of which the plaintiff claims to have a superior right" (*Nissan Motor Acceptance Corp. v Scialpi*, 94 AD3d 1067, 1068 [2d Dept 2012] [citation omitted]). "Conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights" (*Vigilant Ins. Co. of Am. v Hous. Auth. of City of El Paso, Tex.,* 87 NY2d 36, 44 [1995] [internal quotations and citations omitted]).

Of course, a key element for bringing these claims is knowing the identity of the person who bought the painting at the auction (*see Alexander v Spanierman Gallery, LLC,* 33 AD3d 411, 412, 822 NYS2d 506 [1st Dept 2006]). That is the person to whom petitioners must make a demand for the painting and is therefore information that is material and necessary for a forthcoming action. Petitioners cannot bring a case without this information and the Court finds that respondent, which has the information, must disclose it.

In a proceeding brought under CPLR 3102, petitioners only have to show that they have a meritorious cause of action. The detailed evidence submitted here, including the affidavit of the

**154555/2023  AVNI, MORDECHAI ET AL vs. SOTHEBY'S**
**Motion No.  001**

**Page 6 of 12**

investigator (Mr. Palmer), establishes valid claims. Petitioners allege that they are the rightful heirs and detail ample facts surrounding the Fröhlichs' flight from Austria to London. Respondent did not sufficiently dispute that the Fröhlichs were forced to flee their home and leave their possessions due to Nazi persecution. Nor did they adequately dispute the fact that the sale of the subject painting occurred while the Fröhlichs were in London and they had no formal role in that sale (nor could they under Nazi-era laws).

The Court also rejects respondent's claim that laches forecloses this proceeding. "Laches is an equitable doctrine based on fairness. Courts have invoked the doctrine to prevent stale claims and the prejudice that can result. Whether the doctrine is applicable, however, depends on the facts of the case" (*Cont. Cas. Co. v Employers Ins. Co. of Wausau*, 60 AD3d 128, 137, 871 NYS2d 48 [1st Dept 2008]). This Court is unable to find that laches, a fact-intensive doctrine, bars petitioners from even knowing who bought the painting at an auction. To do so, the Court would have to wholly reject the explanations of petitioners as to how and when they came to learn of their possible interest in the painting as heirs of the Fröhlichs.

Here, petitioners have offered detailed reasons for how they came to learn about this painting (*see* NYSCEF Doc. No. 67 [aff in reply of Mordechai Avni][1]). Mordechai observes that he initially did not learn much about Otto and Lili Fröhlich as relatives did not want to speak about the Holocaust (*id*. ¶ 4). He claims that when he recently learned about Otto and Lili's art collection, he (along with his relatives) hired an investigative firm to look into it (*id*. ¶ 5). That satisfies their burden to show that laches is not applicable on this petition as he has alleged that

---

[1] To the extent that respondent might argue this affidavit contains new facts raised in reply, the Court finds such a claim to be without merit. Respondent argued in opposition that laches barred petitioners' claims so they were entitled to expound on the circumstances surrounding when they learned about their possible claim to the painting.

**154555/2023   AVNI, MORDECHAI ET AL vs. SOTHEBY'S**
  **Motion No.  001**

**Page 7 of 12**

7 of 12

he took decisive steps to investigate his ancestors' history, which led to the discovery of this painting.

The Court observes that the central case upon which respondent relies (*Matter of Peters v Sotheby's Inc*. 34 AD3d 29, 821 NYS2d 61 [1st Dept 2006] [denying a petition for pre-action disclosure for the identity of an auction winner based, in part, on laches]) is not binding as it contains inapposite facts. After all, laches determinations are made based upon the unique facts of each dispute. In *Peters*, the original owner had actual knowledge of the identity of the possessor of the artwork (his brother, who sold it without his permission).  And that sale and subsequent loss of the artwork had more to do with an intrafamily dispute rather than a forced sale due to Nazi restrictions (*id*. at 31-33). Here, the facts alleged suggest that Otto Fröhlich had little role in the sale as he had already fled to London by the time the painting was sold and petitioners allege the sale was conducted by a Nazi collaborator at a price well below market value.  Clearly, that is a far cry from waiting around to bring a case after you know your brother took your painting.

A comparison of the instant facts with a more recent case also compels the conclusion that laches is not a basis to deny the instant petition (*c.f. Zuckerman v Metro. Museum of Art,* 928 F3d 186, 194 [2d Cir 2019] [denying a claim for replevin based on laches where the family seeking the return of a 'masterwork' by Picasso could have readily determined that the artwork was prominently displayed by the Met for decades]).[2]  Unlike *Zuckerman*, there is no evidence here that the subject artwork is universally recognized or that the identity of the owner was easily discoverable. Rather, the provenance suggests it has been owned by anonymous private sellers

---

[2] The Court recognizes that petitioners assert that *Peters* is no longer good law because of the passage of the HEAR Act (a law that will be discussed in greater detail below).  But the Second Circuit, in *Zuckerman*, noted that the HEAR Act specifically permitted a defendant to raise an equitable defense such as laches to claims for replevin. Therefore, *Peters* is not clearly no longer good law.

**154555/2023   AVNI, MORDECHAI ET AL vs. SOTHEBY'S**
**Motion No.  001**

**Page 8 of 12**

since at least 2001 and by a small family-run art gallery in Germany before that. In *Zuckerman*, a very famous painting was hanging in a very famous museum for decades; here, a not-so-famous painting was kept under the radar for decades.

And, of course, the *Zuckerman* case dealt with the merits of a replevin action, not a pre-action disclosure proceeding. In this Court's view that distinction is critical. There is no basis on this record to show that it was readily obvious that petitioners knew (or should have known) about the painting and waited decades without citing a good reason. At least on this record, this was not a famous painting sitting in a museum and petitioners claim that they only recently learned that their ancestors owned an art gallery.

The Court also rejects the argument that the existence of another person or persons with a better claim to the painting should compel the Court to deny this petition. Respondent focuses on the heirs of Adele Fischer, who was purportedly Otto Fröhlich's cousin and who died in a concentration camp. That someone else might have a claim is not a reason to withhold information about the owner of the painting. Withholding such information would prevent both petitioners and an heir of Ms. Fischer from bringing a claim for replevin or conversion. Besides, this case is about entitlement to information; whether petitioners are entitled to the painting is not to be decided here.

The Court also grants the petition to the extent that petitioners seek information about the seller at the auction in 2019. As petitioners point out, the HEAR Act applies.

> "In 2016, Congress passed the Holocaust Expropriated Art Recovery Act of 2016 (HEAR Act). The two purposes of the HEAR Act are:
>
> (1) To ensure that laws governing claims to Nazi-confiscated art and other property further United States policy as set forth in the Washington Conference Principles on Nazi-Confiscated Art, the Holocaust Victims Redress Act, and the Terezin Declaration, and

**154555/2023 AVNI, MORDECHAI ET AL vs. SOTHEBY'S**
**Motion No. 001**

**Page 9 of 12**

9 of 12

[* 9]

(2) To ensure that claims to artwork and other property stolen or misappropriated by the Nazis [during the Holocaust] are not unfairly barred by statutes of limitations but are resolved in a just and fair manner (HEAR Act, Pub L No 114-308, at § 3 [2016]).

In pursuit of these aims, the HEAR Act extended the statute of limitations in which a claim may be brought to six years from the time that the artwork's identity and location, and the claimant's possessory interest, are discovered"
(*Reif v Nagy,* 61 Misc 3d 319, 323 [Sup Ct, NY County 2018], *affd as mod,* 175 AD3d 107 [1st Dept 2019]).

Accordingly, because petitioners claim that they found out about their potential interest in the painting in 2020, the identity of the seller is relevant to their conversion claim. Again, as noted above, this proceeding only involves petitioners' request to learn the identity of the seller and the purchaser at the auction. It is not a finding that petitioners are entitled to recover as a matter of law—that will be the issue in a future lawsuit if petitioners decide to bring one. Nor should this decision be construed as an opinion on respondent's actions surrounding the auctions.

Respondent's contention that its policy of confidentiality precludes the disclosure of this information is also not a reason to deny the instant petition. Respondent did not attach a copy of this confidentiality policy nor did it cite to binding caselaw that it is permitted to withhold this information. The Court sees no reason to permit a vague allusion to confidentiality to shield (and effectively prevent) petitioners from pursuing their claims. While it is understandable that respondent would not freely disclose buyers and sellers to anyone who asks, that, standing alone, is not a reason to deny petitioners' requests for relief. Petitioners have come to this Court seeking an order to disclose and have shown good reasons for the Court to order such disclosure.

**Summary**

Petitioners submitted ample documentation in this proceeding to show their connection to the Fröhlichs (NYSCEF Doc. No. 8) and to document the history of the painting (NYSCEF Doc.

**154555/2023   AVNI, MORDECHAI ET AL vs. SOTHEBY'S**
**Motion No. 001**

**Page 10 of 12**

Nos. 9-31). In other words, this is not a situation in which someone presents a vague assertion that they have a right to a painting. Petitioners included support for their allegations that the subject painting was subject to a forced sale because of Nazi persecution and that Dr. Fröhlich sought to get back the painting after the war without ever finding out the painting's location. Respondent's claims, in this Court's view, largely amount to objections that could be raised as defenses in a case brought by petitioners. But they do not utterly refute petitioners' allegations.

As the Appellate Division, First Department noted "The tragic consequences of the Nazi occupation of Europe on the lives, liberty and property of the Jews continue to confront us today. We are informed by the intent and provisions of the HEAR Act which highlights the context in which plaintiffs, who lost their rightful property during World War II, bear the burden of proving superior title to specific property in an action under the traditional principles of New York law. We also note that New York has a strong public policy to ensure that the state does not become a haven for trafficking in stolen cultural property, or permitting thieves to obtain and pass along legal title" (*Reif v Nagy*, 175 AD3d 107, 132, 106 NYS3d 5 [1st Dept 2019]). This Court merely finds that petitioners should have a chance to pursue their claims. Learning the names of the seller and purchaser at the 2019 auction accomplishes the goals of the HEAR Act and the policy of this state.

Accordingly, it is hereby

ADJUDGED that the petition is granted to the extent that respondent must disclose to the petitioners the identity of both the purchaser and the seller of the subject painting at the 2019 auction by providing the name, address, and all other contact information; the information must be provided to petitioners within 7 days after notice of entry of this decision, order and judgment; and it is further

**154555/2023    AVNI, MORDECHAI ET AL vs. SOTHEBY'S**
**Motion No.  001**

**Page 11 of 12**

ORDERED that petitioners are entitled to recover costs and disbursements against

respondent and the clerk shall enter a judgment therefor upon presentation of proper papers.

| __1/2/2024__ | | | |
|---|---|---|---|
| **DATE** | | | **ARLENE P. BLUTH, J.S.C.** |

| CHECK ONE: | X | CASE DISPOSED | | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**154555/2023   AVNI, MORDECHAI ET AL vs. SOTHEBY'S**
**Motion No.  001**

**Page 12 of 12**

12 of 12